Argued November 7, decided December 6, 1910.

## LONGFELLOW v. HUFFMAN.

[112 Pac. 8.]

APPEAL AND ERROR — HARMLESS ERROR — ADMISSION OF EVIDENCE — PARTY NOT ENTITLED TO SUCCEED.

1. If the jury could not have properly rendered any other verdict in any event, error in the admission of evidence, or in instructions, was harmless.

CONTRACTS—CONSTRUCTION—CONSTRUING INSTRUMENTS TOGETHER.

2. Where a note, secured by a chattel mortgage, and a contract thereafter executed relating to the same subject-matter are to be construed together, the recitals in each should be explained by reference to the other instruments, as if they were parts of one instrument, so as to effectuate the intent of the parties.

BILLS AND NOTES—PAYMENT—PAYMENT IN PROPERTY.

3. If a contract by defendant to deliver to plaintiff all the lambs of a flock sold defendant for the next two years at a stipulated price, the amount to be credited on the note which was executed by defendant for the purchase price when the sheep were sold a month prior thereto, was intended to provide a manner for paying the note in lambs instead of money and not as a contract of sale, it was optional with defendant to pay the note either in money or lambs.

SALES—CONTRACTS—CONSTRUCTION.

4. Plaintiff sold defendant a flock of sheep, taking a note, payable on or before two years, secured by a chattel mortgage on the flock and

its increase, which, though in terms an absolute sale, contained, a defeasance clause. A month later, defendant agreed in writing to deliver to plaintiff all the lambs from the flock during the next two years at a certain price, the amount to be credited on the note. *Held*, that, the contract was to deliver all the increase of the flock, whether it was more or less than sufficient to discharge the note, being ân absolute contract to sell and deliver the increase of the sheep.

SALES—EXECUTORY CONTRACT.

5. The contract was not intended as additional security for payment of the note, since it was executory, and could not add anything to the security already afforded by the chattel mortgage.

From Wallowa: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE SLATER.

This is an action by N. C. Longfellow against John W. Huffman and Arnold R. Huffman, partners under the firm name and style of Huffman & Son to recover damages for an alleged breach of a contract, made by defendants to sell and deliver to plaintiff some lambs, the product for the years 1905 and 1906, of a certain flock of sheep owned by defendants. Plaintiff secured a judgment for a failure to deliver in 1906, and defendants have appealed. The principal facts, and the pleadings upon which this trial was had, are substantially the same as those in a former trial of the same case, and, as they were fully stated in the opinion of this court rendered on the second appeal, they need not be restated here. See 49 Or. 486 (90 Pac. 907) ; 55 Or. 481 (104 Pac. 961).

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Thomas H. Crawford.*

For respondent there was a brief and an oral argument by *Mr. Daniel W. Sheahan.*

MR. JUSTICE SLATER delivered the opinion of the court.

This is the third time this case has been, in some form, before this court. In the first case the action was based upon the refusal of defendants to deliver the lambs for 1905, but as plaintiff's evidence failed to show that

defendants offered to credit the price upon his note, or that he had the note at the time, or was able to credit the purchase price thereon, the trial court granted a judgment of nonsuit, which was affirmed on appeal (49 Or. 486: 90 Pac. 907). In the second case the action was upon the entire contract. Damages were demanded for failure to deliver lambs, the increase of 1905 and 1906, and the trial court directed a verdict for defendants. Upon appeal from this judgment this court sustained the action of that court, in so far as the damages claimed for failure to deliver lambs for 1905 were concerned, for substantially the same reasons as stated in the first opinion. We held, however, that the contract being severable, plaintiff, if the facts stated in the complaint were found to be true, might recover for defendants' failure to deliver in 1906; and because of the trial court's refusal to submit to the jury the issues presented by the answer, whether the contract alleged and the note and chattel mortgage were executed at the same time as one transaction, and whether the contract was entered into for the purpose of further security for payment of the debt evidenced by the note. (55 Or. 481: 104 Pac. 961.)

Upon a retrial of the case the evidence was undisputed and conclusive that the note and mortgage, although dated October 1, 1904, were not delivered by the makers thereof until November 2d following, and concurrently with the execution and delivery of the contract upon which this action is based, and that the subject-matter thereof was included in the terms of chattel mortgage. Upon this state of the record, although there had been offered by each of the parties, and received in evidence, conflicting, extrinsic parol testimony of the acts and declarations of the respective parties, tending to show their intent as to whether the contract was on the one hand an independent contract to sell, or, on the other, a further security for the payment of the note, defendants

requested of the court a directed verdict in their favor, based upon the ground that, as the testimony conclusively establishes that the several instruments were executed by the same parties at the same time, and include the same subject-matter, and are not ambiguous or conflicting in terms, it was the duty of the court to construe them as one contract, and as intended to secure the payment of the debt. As an alternative, defendants requested an instruction to the effect that if the several instruments were delivered at the same time, were between the same parties, and concerned the same subject-matter, they must find for the defendants. These and other similar instructions were denied, and defendants saved exceptions.

The court instructed the jury, in substance, that where several instruments are executed and delivered at or about the same time, are between the same parties, and concerning the same subject, all are to be construed as one and the same contract; that if the jury found it was the intention of the parties that the contract should be a part of the chattel mortgage, as additional security for the payment of the note, then the verdict should be for defendants, but if not so intended, but intended as evidence of a sale, then the verdict should be for plaintiff; and that in determining the intent of the parties the jury might take into consideration the extrinsic evidence, showing the previous dealings of the parties, with reference to the band of sheep originally sold by plaintiff to defendants, a previous similar contract existing between the parties in relation thereto, and the acts and declarations of the parties in relation thereto.

Defendants' contention is based upon this assumption, that where there are two contemporaneously written agreements between the same parties, relating to the same subject-matter, they must be construed together as one contract. Some decided cases have thus announced

the rule, and among them is an early case of this court: *Dean* v. *Lawham,* 7 Or. 423, but in a dissenting opinion in that case Mr. Justice BOISE points out that the duty to construe as one contract two apparently separate and distinct agreements does not arise simply because of the concurrence of the three elements named, but that it must appear that they are parts of one and the same transaction. In *Cornell* v. *Todd,* 2 Denio (N. Y.) 132, the court says:

"It is not necessary that the instruments should in terms refer to each other, if in point of fact they are parts of a single transaction. But until it appears they are such, either from the writings themselves, or by extrinsic evidence, the case is not brought within the rule. * * It may very well be that the same parties should have several transactions in one day, and of the same general nature; and yet that each one should be distinct from and wholly independent of the other."

In the later case of *Blagen* v. *Thompson,* 23 Or. 239, 246 (31 Pac. 647, 650: 18 L. R. A. 315), Mr. Justice BEAN states the rule with more caution as follows:

"When two written contracts are entered into between the same parties, concerning the same subject-matter, whether made simultaneously or on different days, they may, under some circumstances, be regarded as one contract and interpreted together."

What circumstances would be necessary to make such agreements one transaction was not essential to the discussion of that case, but the citation to Bishop, Contracts, § 165, made in that connection, may be significant. That author there says that separate instruments, executed under the circumstances mentioned, "may be regarded as one contract, when this view of them is just, and accords with the intent of the parties; and, whether so or not, all should be interpreted together. Yet, as a foundation for suing, what thus appears to be one contract may in law constitute more contracts than one;

this will depend upon the words, the subject, and the other facts or the justice of the case." Other authors exercise the same caution in stating the rule; thus, 2 Page, Contracts, § 1116: "They may be construed together as a part of the same contract, at least in the absence of evidence to the contrary"—citing *Weber* v. *Rothchild*, 15 Or. 385 (15 Pac. 650: 3 Am. St. Rep. 162). See, also, 9 Cyc. 580, 581.

1. But, assuming that defendants' primary contention is correct, that it was the duty of the court to have construed these several instruments as one, and that as the contracts are not indefinite, uncertain, or ambiguous in their terms, such construction is to be made without the aid of extrinsic evidence as to their intent and meaning, still we find ourselves unable to come to any other result than that derived by the jury in this case. And if the jury could have arrived at no other conclusion, any alleged error of the court in receiving, over defendants' objection, extrinsic parol testimony to ascertain the intent, or in giving instructions relative thereto, such error would be harmless, and would not justify a reversal of the judgment.

2. Construing these instruments together as one contract, every part thereof must, if possible, be given effect, and "the court will read them in such order of time and priority as will carry into effect the intention of the parties, as the same may be gathered from all the instruments taken together. And the recitals in each may be explained or corrected by a reference to any other, in the same way as if they were only several parts of one instrument." 2 Parsons, Contracts (9 ed.) 503.

In *Thorp* v. *Mindeman,* 123 Wis. 149 (101 N. W. 417: 68 L. R. A. 146: 107 Am. St. Rep. 1003), which was an action by an indorsee to recover upon an ordinary, negotiable promissory note, the defense was made that there

was no consideration for the note, and that a mortgage was given with the note to secure its payment, and contained covenants that, if imported into the note, would destroy its negotiability. The defendant's argument was that the note and mortgage, though separately executed, comprised one instrument; the note being that instrument. Answering this the court says:

"Construing together simply means that, if there be any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out, and that the whole agreement actually made may be effectuated. This does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties. They may be intended to be separate instruments, and to provide entirely different things, as in the very case before us. The note is given as evidence of the debt, and to fix the terms and time of payment. It is usually complete in itself—a single, absolute obligation. The purpose of the mortgage is simply to pledge certain property as security for the payment of the note."

3. This action is for breach of the terms of the contract, and the question is, do the terms of the note, and the mortgage given to secure it, so limit and modify the contract as to prevent a recovery only to the extent of the amount due on the note? If this contract is to be construed, as contended for in one branch of their argument by defendants, as intended only to provide a way and manner of paying off the note in lambs, rather than in money, and not intended to evidence a contract to sell chattels, then plaintiff could not complain, so long as he got payment in one or the other of these methods. If this is the correct construction of the several instruments the inevitable conclusion must be that it was wholly optional with defendants to pay in either money or lambs (*Heywood* v. *Heywood*, 42 Me. 229: 66 Am. Dec. 277),

because under that view payment of the note is the principal thing, and payment in money would satisfy the demand as well as payment in lambs. If then, when plaintiff demanded, in October, 1905, the delivery of lambs, he had with him the note, and offered to credit the price thereon, but defendants refused to make delivery, and tendered payment in money, plaintiff must have accepted the money, and would have no cause for claim of damages.

4. The contract, however, imposes an absolute obligation upon the defendants to sell and deliver to plaintiff, at a specified price, all the lambs, the increase of certain ewes, during the years 1905 and 1906, and a concurrent obligation rests upon plaintiff to take and pay for them. Suppose, again, that the increase of the sheep was more than sufficient to liquidate the amount due on the note, would defendants be under no obligation to deliver the excess after having delivered sufficient to pay the note? We do not see how they could avoid the obligation to deliver all the lambs.

Whether instruments of the same general character, but much more indefinite as to the intent than the ones now under consideration, are to be treated as contracts for the payment of a specific sum of money, but in which a privilege is reserved to the payor to pay the same in specific articles at the price agreed, or whether they shall be treated as contracts for the delivery of specific articles at an agreed price, and at a specified time and place, the authorities are by no means uniform. "If a note or written promise," says Mr. Parsons in his work on Contracts, vol. 2 (9 ed.) p. 215, "be to pay so much money, but in goods specified, and at a certain rate, and the promise is broken, it is not quite settled whether the law will regard this as a promise to pay money or to deliver goods." In discussing this question that learned author suggests that, "the true question is, whether it was

intended that the promisor might elect to pay the money
or deliver the articles; or in other words, whether it
was intended that the promisor might elect to pay the
money or deliver the articles; or in other words, whether
it was agreed only that he owed so much money and
might pay it either in cash or goods as he saw fit. There
might be something in the form of the promise, in the
*res gestae,* or in the circumstances of the case, which,
by showing the intention of the parties, would decide
the general question; but, in the absence of such a guide,
and supposing the question to be presented merely on the
note itself, as above stated, we should say that the more
reasonable construction would be, that it was an agree-
ment for the delivery of goods in such a quantity as
named, and of such a quality as that price then indicated.
And on a breach of this contract, the promisor should
be held to pay, as damages, the value of so much of such
goods at their increased or diminished price. But if the
promise be only to pay one thousand dollars at a certain
time, in flour, then this sum is to be paid either in flour
or in money, at the election of the payor."

For the opposite view, see *Heywood* v. *Heywood,* 42
Me. 229 (66 Am. Dec. 277), and the dissenting opinion
therein of Mr. Justice RICE, where the cases are cited
and discussed. But in all these cases the promise upon
which the action was based was of this character: "For
value received I promise to pay John Pinney seventy-
nine dollars and fifty cents * * in salt at 14 shillings per
barrel," as in *Pinney* v. *Gleason,* 5 Wend. (N. Y.) 394
(21 Am. Dec. 223). We have no such contract here.
The form of the promise creates no doubt as to the intent.
It is not a promise to deliver lambs at a fixed price to the
amount of the debt, but it is to deliver all the increase
of a certain flock of sheep, whether the number is greater
or less than sufficient to liquidate the debt. The subse-
quent clause of the contract, requiring the price to be

credited on the note, is simply an agreement of the parties as to the appropriation of the proceeds, and does not qualify the previously expressed intention to sell and deliver personal property.

5. Nor are we able to discover an intent that this contract was to be additional security, as argued by defendants. A chattel mortgage of the usual form was given upon the original stock and its increase, to secure the note. The mortgage recites, in terms, an absolute sale, but is followed by a defeasance. The legal effect thereof is to create a specific lien. The contract, however, is not, in terms, a present sale, but is a personal obligation to sell in the future. It is wholly executory. It creates in the prospective purchaser no interest in or lien upon the subject-matter of the contract, but imposes only personal obligations and confers personal rights. As the obligee had, in the chattel mortgage, all the security upon the lambs for the payment of the note that it was possible for him to obtain, it would be repugnant to sound reasoning to say that this executory contract to sell was intended as additional security.

For these reasons we are bound to say that the verdict of the jury is the only legal result obtainable by a construction of the several instruments as representing one transaction.

The judgment is therefore affirmed.     AFFIRMED.