## OKLAHOMA MOLINE PLOW CO. v. SMITH.

No. 3050.   Opinion Filed February 28, 1914.

(139 Pac. 285.)

1. **JUDGMENT—Sales—Replevin by Seller—Evidence—Judgment.** An implement company sold to a retail merchant a number of bills of merchandise, the sales being evidenced by written contracts in which it was provided that the title to and ownership of the goods sold should remain in the vendor until payment of the purchase price, and that, if the purchaser sold out or became insolvent, all notes given for goods bought under the contract should then become due and payable. The vendor thereafter, but before the maturity of the notes given by the purchaser, brought an action of replevin to recover the implements in the latter's possession, claiming the purchaser had (1) sold out, and (2) had become insolvent. The evidence introduced, considered in connection with the allegations of defendant's answer, failed to prove a sale, but, instead, an agreement to sell on certain conditions to be performed. There was neither proof nor admission of defend-

ant's insolvency, though there was evidence that the proposed purchaser of the stock had taken steps to comply with the bulk sales act, and that a subsequent meeting of the defendant's creditors had been held. **Held,** that the court properly sustained a demurrer to plaintiff's evidence.

2. **SALES**—''Actual Sales''—''Executory Contract to Sell.'' The distinction between an actual sale and a mere executory agreement to sell is that, in the former, the thing which is the subject of the contract becomes the property of the vendee the moment the contract is concluded, and without regard to the fact whether the goods be actually delivered to the buyer or remain in the vendor's possesion; while, in the latter, the goods remain the property of the vendor until the contract is executed.

3. **INSOLVENCY**—Definition. Aside from the classes of cases controlled by sections 231 and 4153, Comp. Laws 1909 (sections 215 and 3859, Rev. Laws 1910), it may be generally said that insolvency, when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of business.

4. **PLEADING**—Construction—Admission—Effect. An admission, in an adversary's pleadings, to be available, must be taken with all the qualifying clauses and limitations which the pleader has included in it. In other words, it must be taken as a whole; and, where facts are alleged in connection with an admission which nullify it, its effect as an admission is destroyed.

5. **APPEAL AND ERROR**—Presentation Below—Waiver of Objection. Where the court, after sustaining a demurrer to plaintiff's testimony, permits the defendant to withdraw his cross-petition, and thereupon discharges the jury from further consideration of the cause, and renders such judgment for the defendant as it was claimed the state of the pleadings and proof demanded, without objection on the part of plaintiff, other than to the court's action in sustaining the demurrer, the error, if any was committed, was waived by plaintiff's failure to object and except to the court's ruling.

(Syllabus by Sharp, C.)

*Error from District Court, Blaine County;*
*Jas. R. Tolbert, Judge.*

Action in replevin by the Oklahoma Moline Plow Company against O. A. Smith. From a judgment for defendant, plaintiff brings error. Affirmed.

*Shartel, Keaton & Wells* and *A. L. Emery* for plaintiff in error.

*L. H. Hampton* for defendant in error.

Opinion by SHARP, C. Plaintiff's action was one in replevin, and sought to recover the possession of a large number of wagons and buggies theretofore sold by it to the defendant. The several sales were evidenced by written contracts, each of which includes the following two provisions:

"Second party agrees that the title to and ownership of all goods which may be shipped as herein provided, shall remain in the party of the first part, and their proceeds, in case of sale, shall be the property of the Oklahoma Moline Plow Company, and subject to their order until full payment shall have been made for said goods or said notes and until any judgment rendered therefor or thereon is paid in full.

"If the purchaser under this contract sells out, fails or becomes insolvent or dies; or if any member of the purchaser's firm fails, sells out or becomes insolvent or dies; or failure to pay notes or accounts at maturity; all accounts or notes for goods bought under this contract, including renewal notes in whose hands soever said notes may be, shall then become due and payable whether the notes be given in payment for goods or accounts or collateral security thereto."

The action was instituted December 7, 1909, at which time defendant was owing plaintiff two certain notes: One for $1,540, dated July 9, 1909, due February 1, 1910; and a second for $1,453.65, dated November 1, 1909, due March 24, 1910.

The plaintiff rests its right to recover possession of the wagons and buggies upon the above-mentioned provision of the sale agreements, claiming the defendant had sold out and was insolvent when its action was instituted. Defendant's demurrer to plaintiff's evidence being sustained, it is necessary that we first examine the evidence, and the admissions in defendant's answer, if any, to determine whether or not the court erred in sustaining the demurrer. By the first of the above-mentioned provisions of the contract, it will be observed it was agreed that the title to and the ownership of all goods therein described should remain in the vendor, and that their proceeds, in case of sale, should be the property of the vendor, subject to its order, until full payment had been made for the goods or notes taken, and until any judgment rendered thereon had been fully paid. By the second provision of the contract it was provided that if the purchaser sold

out, failed, or became insolvent, or died, or failed to pay the notes or accounts owing by him at maturity, thereupon all accounts for goods bought under the contracts, including renewal notes, should then become due and payable without regard to whether the notes be given in payment for goods or accounts or collateral security thereto.

From the testimony and admissions in defendant's answer, had defendant done, or suffered to be done, one or more of the acts named? It is urged that the proof shows that he had (1) sold out, and (2) was insolvent, when the replevin action was brought. Defendant's first witness was the register of deeds of Blaine county, who merely identified certain of the sale contracts that had been filed for record in his office. The remaining testimony, other than the sale contracts themselves, was that given by M. L. Wood, plaintiff's resident manager in Oklahoma, who testified that plaintiff received a notice from a Mr. Pattee that he was about to purchase defendant's stock of goods; that the notice sent out was one provided for by the bulk sales statute, and conveyed the information that Pattee would proceed with the purchase if no objection was raised on the part of creditors; that subsequently a partial meeting of defendant's creditors was called at the former's solicitation. Further proof of the alleged sale by defendant, it is claimed by plaintiff, is found in defendant's answer and cross-petition. We have read this answer with care, and cannot agree with plaintiff's contention. It expressly denies that defendant either sold out, failed, or was insolvent. It is stated with much particularity that defendant and J. E. Pattee had entered into a contract, whereby the former had agreed to sell, and the latter agreed to buy, at the stipulated price of $15,500, defendant's stock of merchandise in the town of Watonga, together with certain real property, and that said contract to sell included the property replevined by plaintiff, and provided further that said defendant was bound and obligated to deliver the stock of goods, wares and merchandise to the said Pattee free and clear of all liens, accounts, notes, or claims existing against said defendant, for or on account of any of said goods contained in said stock;

that in fulfillment of that obligation, and for the protection of defendant's creditors, it was further agreed in said contract that due and legal notice of such intended sale should be given to all of the creditors of defendant; that thereafter said notices were given by registered mail, one of which was sent to and received by plaintiff. Nowhere in the answer is there any admission that the defendant had either sold out or that he was insolvent. On the contrary, the answer, taken as a whole, clearly and unequivocally sets out only a contract of sale on the part of defendant, as distinguished from a sale. It was the latter only that accelerated the maturity of the outstanding notes.

A "sale" in its broadest sense may be defined as the transfer of the property in a thing for a price in money, while a "contract to sell goods" is a contract whereby the seller agrees to transfer the property in goods to the buyer for a price, which the buyer pays or agrees to pay, and is sometimes termed an "executory contract of sale," or "an agreement to sell." It is said by an eminent author (Benjamin on Sales, secs. 3, 308) that the distinction between an actual sale and a mere executory agreement is that in a bargain and sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in the possession of the vendor; whereas, in an executory agreement, the goods remain the property of the vendor until the contract is executed.

Confessedly the stock of goods was never sold to Pattee, but instead the title thereto remained in Smith, subject only to the title yet retained by plaintiff under its original contracts of sale. Where under the contract of sale the property in the goods is transferred from the seller to the buyer, the contract is called a "sale"; but where the transfer of the property in the goods is to take place at a future time, or subject to some condition thereafter to be fulfilled, the contract is called an "agreement to sell." Chalmers, Sale of Goods, sec. 3; *Longfellow v. Huffman,* 57 Or. 338, 112 Pac. 8; *Idaho Implement Co., Ltd., v. Lambach,* 16 Idaho, 497, 101 Pac. 951; *Strong Deemer & Co. v. Dinniny et al.,*

175 Pa. 586, 34 Atl. 919. The proof of a sale was totally wanting; neither are there such admissions in defendant's answer as will supply the want of proof on the part of plaintiff.

An admission in a pleading, to be available, must be taken with all the qualifying clauses and limitations which the pleader has included in it, and all the facts alleged in connection therewith. The whole of the statement must be construed together, and, where facts are alleged in connection with an admission which nullify it, its effect as an admission is destroyed.  In other words, an admission in a pleading of one's adversary must be taken as an entirety, and one who seeks to use such an admission must take it *cum onere*.  *Clark v. Missouri, K. & T. Ry. Co.*, 179 Mo. 66, 77 S. W. 882; *Young v. Katz*, 22 App. Div. 542, 48 N. Y. Supp. 187; *Garrie v. Schmidt et al.*, 25 Misc. Rep. 753, 55 N. Y. Supp. 703; *Upton v. S. C. & G. E. R. Co.*, 128 N. C. 173, 38 S. E. 736.

Adverting to the second provision of the sale contracts, was there proof or admission in the defendant's answer of his insolvency when the action was begun? "Insolvency" is defined (sec. 4153, Comp. Laws 1909 [Rev. Laws 1910, sec. 3859]) as follows:

"A person is insolvent, within the meaning of the last section, when he ceases to pay his debts in the manner usual with persons of his business, or when he declares his inability or unwillingness to do so."

Section 231, Comp. Laws 1909 (Rev. Laws 1910, sec. 215), provides that a debtor is insolvent, within the meaning of the chapter on assignments for benefit of creditors, when he is unable to pay his debts from his own means as they become due.  Independent of statute, it may generally be said that insolvency, when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of business.  The definition is one generally accepted by both the state and federal courts.  Words and Phrases, vol. 4, p. 3651. There may be room for serious doubt that either of the foregoing statutory definitions of insolvency applies in the instant case, on account of their apparent express limitations to the purposes of the particular act in which found.  Accepting, however, the general rule as stated to be correct, we find neither proof nor admis-

sion of insolvency.   No part of the indebtedness owing by defendant to plaintiff was due; neither is there proof that defendant owed any past-due debts.   There is nothing to show the amount of defendant's indebtedness, other than that owing to the plaintiff, while, on the other hand, according to the allega-tions of the answer, the defendant was to receive from Pattee notes secured by real estate mortgages to the amount of $18,423 less $2,923.   That subsequent meetings of creditors were held, the result of the sending out of notices by Pattee, in an effort to comply with the bulk sales act, is not of itself evidence of the defendant's insolvency.   Neither can any inference of insolvency fairly arise from an endeavor to comply with said statute.   Sections 7908 and 7909, Comp. Laws 1909 (Rev. Laws 1910, secs. 2903 and 2904.)

From what has been said, it is clear that plaintiff wholly failed to make out a case, for it must be kept in mind that, though under the contract the title and ownership of the property was in plaintiff, yet its right to take possession of the vehicles prior to maturity of its notes was based solely upon the grounds to which attention has been called.   No other cause existed by which plaintiff was given the right to recover possession of the property sold to defendant, prior to the maturity of its demands.   Having failed in its proof, the court properly sustained the defendant's demurrer to plaintiff's evidence.   Such being the case, it was proper that the court enter the judgment that it did.   It is provided by statute (section 5794, Comp. Laws 1909 [Rev. Laws 1910, sec. 5002]) that the party upon whom rests the burden of the issues must first produce his evidence; after he has closed the evidence, the adverse party may interpose a demurrer thereto, upon the ground that no cause of action or defense is proved.   If the court shall sustain the demurrer, such judgment shall be rendered for the party demurring as the state of the pleadings or the proof shall demand. Both plaintiff's petition and affidavit for replevin named the several items sought to be replevined, with the value of each separately stated.   It was shown by the testimony of plaintiff's witness Wood that these articles after seizure had been turned over to plaintiff by the sheriff.

But it is unnecessary to determine the question of the right of the court to render judgment for the defendant for the return of the property or its value, for the record contains no objection to the court's action in this regard; the only objection made or exception taken being to the ruling of the court in sustaining the demurrer to the evidence. *Stanard v. Sampson et ux.*, 23 Okla. 13, 99 Pac. 796; *Brown v. First Nat. Bank*, 35 Okla. 726, 130 Pac. 140; *Davis v. Gray*, 39 Okla. 386, 134 Pac. 1100. The plaintiff having accomplished the main object of its suit, through the preliminary process of the court, it was proper to a final and complete determination of the action that such judgment be rendered in favor of defendant as authorized by the proof or the state of the pleadings, and whether the court proceeded in a proper manner is not subject to review in this court; no objection or exception at the time being taken.

The judgment of the trial court should in all things be affirmed.

By the Court: It is so ordered.