**AIRE CARDINAL INTERNATIONAL, INC., Plaintiff-Appellant,**

v.

**UNITED AIR LEASING CORPORATION, formerly United Aircraft Leasing Corporation, Defendant-Appellee.**

No. 81–1456.

United States Court of Appeals, Tenth Circuit.

April 18, 1983.

R. Steven Haught, Oklahoma City, Okl. (William B. Rogers, Oklahoma City, Okl., with him on brief) of Ames, Daugherty, Black, Ashabranner, Rogers & Fowler, Oklahoma City, Okl., for plaintiff-appellant.

Maynard I. Ungerman, Tulsa, Okl. (Thomas James Elkins with him on brief) of Ungerman, Conner & Little, Tulsa, Okl., for defendant-appellee.

Before SETH, Chief Judge, BREITEN-STEN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Aire Cardinal International, Inc. (Aire Cardinal), a California corporation, plaintiff below, appeals from an adverse jury verdict and judgment in favor of United Air Leasing Corporation (United), an Oklahoma corporation, defendant below, in this suit for damages. Jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) (1976).

United leased two DC8–33 jet aircraft by virtue of separate but identical lease agreements entered into with Aire Cardinal. In addition to provisions whereby Aire Cardinal agreed to pay United a fixed monthly rental on each plane, insurance premiums, and other such covenants, the lease agreements contained Articles 34 and 35 which are pivotal in this litigation. Article 34 provides, in pertinent part, that should Aire Cardinal default on any terms, covenants or conditions of the lease agreement, United may, at its option, following a 10 day prior written notice of default, terminate the lease unless Aire Cardinal corrects the default during the 10 day period. Article 35 provides for automatic termination of the lease should Aire Cardinal suffer or commit enumerated acts of insolvency, including its inability to pay its debts as they mature. The leases provide that they are to be interpreted under the laws of the State of Oklahoma.

The undisputed facts giving rise to this litigation are: following execution of the aforesaid lease agreement on March 29, 1976, Aire Cardinal issued two insufficient funds checks payable to United dated August 13 and 16, 1976, respectively, purportedly in payment of monthly aircraft rentals due for deposit to account of United with Boulder Bank of Tulsa, Oklahoma, respectively, on August 9 and 15, 1976, each in amount of $17,500.00; that the president of United flew from Tulsa, Oklahoma, on or about August 16, 1976, armed with a prepared written notice of default directed to Aire Cardinal resulting from the failure to make the rental payments due on August 9 and 15, to the Aire Cardinal office in California where he consulted with Aire Cardinal officials, Robert O. Powell, president, and William Burkhouse, who handed him the two checks in amount of $17,500.00, each of which was thereafter dishonored for want of sufficient funds [R., Vol. XVIII, pp. 369–371]; United's president did not deliver United's written notice of default during the course of this conference because Aire Cardinal tendered the two insufficient funds checks in payment of the delinquent rentals; thus, predicated on receipt of the two checks, United's president did not give Aire Cardinal notice of default; United was informed by its Tulsa bank on or about August 20, 1976, that these two checks had been dishonored for want of sufficient funds in Aire Cardinal's account for payment thereof; United immediately notified Aire Cardinal of the non-payments and about the same time United learned that

Aire Cardinal had not tendered insurance premiums and that insurance coverage on one of the two aircraft had been canceled [R., Vol. XVIII, pp. 371–372]; United was also then aware that Aire Cardinal planned to fly one of the planes on a charter flight August 27, 1976, and, in light of notification of insurance cancellation, United withdrew the airworthiness certificates and other qualifying documents that day, advised Aire Cardinal of that action, and informed it that the leases were terminated that date. [R., Vol. XVIII, pp. 371–375]. United thereafter repossessed one aircraft at Las Vegas, Nevada, on August 27, 1976. The other aircraft, however, was being held at Wilmington, Ohio, by a creditor of Aire Cardinal who refused to surrender the aircraft to United when it attempted repossession. The attachment was removed in Ohio in December, 1976, and United then repossessed the aircraft.

In addition to the rental defaults, the non-payment of insurance premiums, and the attachment of one of the aircraft in Ohio by a creditor of Aire Cardinal, the record reflects that Aire Cardinal owed trade creditors some $247,000.00, insurance premiums of $31,000.00 and loans due and owing of some $800,000.00. Aire Cardinal was without any assets as of August 25, 1976.

Following a four day trial, the jury returned a verdict in favor of United, denying Aire Cardinal any damages it claimed to be entitled to for breach of contract, tortious interference with business relations and tortious interference with contractual relations. The court entered judgment in favor of United and awarded United costs of the action.

On appeal, Aire Cardinal contends that it was entitled to judgment as a matter of law on the issue of United's liability for failure of United to give Aire Cardinal the 10 day prior notice of default required under Article 34 and, further, that the trial court erred in failing to sustain Aire Cardinal's motion for directed verdict based on the inapplicability of Article 35. Aire Cardinal contends that there was no evidence on August 26 and 27, 1976, that Aire Cardinal was unable to meet its obligations as they became due and, accordingly, the leases could not have terminated automatically. Aire Cardinal also advances other contentions of trial court error.

The trial court carefully and adequately instructed the jury on the contentions of the parties and the burden of proof concerning one of the principal issues in the case which "centers in your interpretation of the evidence as it relates to Articles 34 and 35 of these lease agreements...." [R., Vol. XIX, p. 589].

Aire Cardinal contends that Article 35 is concerned with acts of insolvency that could plunge lessee's business into bankruptcy or receivership, resulting in the possibility that the aircraft would fall into the hands of a trustee or a receiver by way of an involuntary assignment. [Brief of Appellant, p. 23]. On the contrary, contends United, it is not unusual for leases to contain both a notice provision during which a lessee may correct his default, and a forfeiture or termination provision in the eventuality of insolvency or some act of bankruptcy; further, the two clauses can only be properly construed by holding that Article 34 relates to failure to make payments on the lease, while Article 35 concerns an inability to pay debts, both those debts incurred under the lease and any other obligations of lessee. [Brief of Appellee, p. 11]. We agree with United. The trial court properly permitted the case to go to the jury for factual determination based upon proper, adequate instructions.

The subject leases did contain express stipulation for a forfeiture, *i.e.*, automatic termination, if Aire Cardinal should be unable to pay its debts as they mature. An Oklahoma fraudulent conveyance statute contains a definition of insolvency: "A debtor is insolvent, within the meaning of this Chapter, when he is unable to pay his debts from his own means as they become due." Okla.Stat.Ann. tit. 24, § 32 (West 1955). There is, as previously noted, substantial evidence in the record that on August 27, 1976, when United repossessed the

aircraft and notified Aire Cardinal that the lease agreements were terminated, that Aire Cardinal was insolvent and could not pay its debts as they matured. In *Oklahoma Moline Plow Co. v. Smith,* 41 Okl. 498, 139 P. 285, 287 (1914), the court stated: "Independent of statute, it may generally be said that insolvency, when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of business." *Accord: Stone v. First Wyoming Bank,* 625 F.2d 332 (10th Cir.1980); *In re Wil-Low Cafeterias,* 95 F.2d 306 (2d Cir.), *cert. denied,* 304 U.S. 567, 58 S.Ct. 950, 82 L.Ed. 1533 (1938); 15A W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7360, 7362–65 (Rev. ed. 1981).

In *Howard v. Manning,* 79 Okl. 165, 192 P. 358 (1920), the court recognized the validity of forfeiture provisions, treating them as covenants for the benefit of the lessor, who may elect to exercise them upon proof of a breach of a covenant triggering the right of termination. And in *Ritter v. Perma-Stone Co.,* 325 P.2d 442 (Okl.1958), the court held that by virtue of a contract providing for its termination by defendant for failure of the plaintiff to pay any money due thereunder, the power reserved was not conditional upon a nonpayment of a sum constituting a "major" breach but rather the nonpayment of "any" sum owing, even though minor in character. *See also,* 6 Corbin on Contracts § 1266 (1962). In our view, the terms and provisions of Articles 34 and 35 are clear and unambiguous. The trial court properly instructed the jury thereon.

■ The jury had more than sufficient evidence before it to justify its verdict predicated on Aire Cardinal's default triggering termination of the lease agreements under Article 35. Furthermore, there was adequate evidence in the record justifying the jury verdict pursuant to Article 34. This is so because, following the August 9 and 15, 1976, rental payment defaults, United's president flew to Aire Cardinal's office in California, prepared to serve Aire Cardinal with written notice of default pursuant

to Article 34 predicated on the delinquent rental payments, each in the amount of $17,500.00. He did not deliver the notice, however, because Aire Cardinal submitted to him two checks, each in the amount of $17,500.00, with implied representation that they would be honored for payment upon presentation. The Aire Cardinal checks "bounced" for want of sufficient funds after United's president returned to Tulsa and deposited them for payment. Under these circumstances, and in light of the nature and provisions of the lease agreements, we hold that the doctrine of estoppel applies and excuses United from complying with the 10 day notice of default provision in Article 34 before terminating the lease agreements and undertaking repossession of the aircraft. United was informed by its Tulsa bank on August 20, 1976, that the Aire Cardinal checks had been dishonored for want of sufficient funds. The evidence in the record reflects that at no time from the date of Aire Cardinal's issuance of the two checks to the termination declared by United—a period one day in excess of the 10 day notice time limit—were there sufficient funds in Aire Cardinal's accounts to cover payment of either of the two checks. Thus, the ten day prior written notice of default under Article 34 was waived by Aire Cardinal.

In *Apex Siding & Roofing Co. v. First Federal Savings & Loan Association,* 301 P.2d 352, 355 (Okl.1956), the court said:

Equitable estoppel is the result of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might have otherwise existed as against a person who, in good faith, relied on such conduct and has been thereby led to change his position to his detriment, and who has acquired some corresponding right. It holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who, having a right to do so under the circumstances, has in good faith, relied thereon.

When Aire Cardinal issued the two insufficient funds checks to United in payment

of the delinquent rentals, it effectively relinquished the notice provisions of Article 34. In *Inola Machine & Fabricating Co. v. Farmers New World Life Insurance Co.,* 631 F.2d 712, 715 (10th Cir.1980), we observed: "Moreover, under Oklahoma law no estoppel can result from conduct based on pure mistake. Because waiver requires an actual intention to relinquish a known right, mistake cannot provide a basis for waiver." (Citations omitted).

There was every reason from the evidence in this record for the jury to conclude that when Aire Cardinal issued the two checks on August 17, 1976, it was fully aware that there were insufficient funds to cover them. There was no mistake on the part of Aire Cardinal. Instead, upon issuance of the two insufficient funds checks to United's president, the Aire Cardinal officials were under an obligation to speak— that is, to state that there were not sufficient funds available to Aire Cardinal to cover the delinquent payments. Silence of a party who is under an imperative duty to speak can create estoppel. *Lacy v. Wozencraft,* 188 Okl. 19, 105 P.2d 781 (1940).

We have considered the remaining contentions of error advanced by Aire Cardinal and hold that they are without merit. There is no showing that alleged trial errors were prejudicial. In light of our decision we elect not to reach United's contention that Aire Cardinal's action was barred by the statute of limitations.

WE AFFIRM.