## MAUDE M. KERSHAW vs. ARTHUR MERRITT.

Suffolk.    December 4, 1906. — February 26, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Husband and Wife. Estoppel. Equity Jurisdiction,* Equitable replevin. *Equity
Pleading and Practice,* Master's report.

A wife by placing personal chattels belonging to her in the possession of her hus-
band who pledges them to one advancing money on them in good faith is not
estopped to assert her title to the chattels, and can maintain a suit of equitable
replevin against the pledgee to recover possession of them.

In a suit of equitable replevin by a wife to recover possession of certain chattels
pledged to the defendant by the plaintiff's husband and alleged to belong to the
plaintiff, a master ruled that the plaintiff could maintain her bill and was entitled
to recover possession of the chattels, and found that the plaintiff had no actual
knowledge at the time of her husband's pledging the chattels to the defendant,
that she never expressly authorized her husband to pledge them, and never ex-
pressly assented to or ratified the pledge after it had been made. He added
" But if such knowledge, assent and ratification can be implied in law from the
agency of her husband and her own acts as herein reported, then I find that she
cannot maintain her bill." Facts were stated in the master's report which
would have warranted a finding that the plaintiff in fact knew of the pledge of
her property by her husband and either consented to it originally or afterwards
ratified it. *Held*, that the meaning of the sentence quoted from the master's
report was that the bill could not be maintained if the plaintiff's knowledge was
to be implied as matter of law, and that it did not mean that she could not main-
tain her bill if her knowledge as matter of law could be implied in fact, and a
decree for the plaintiff made by the Superior Court upon the master's report
was affirmed by this court.

LORING, J.    This case was submitted to the Superior Court
on the report of a master to which the defendant took no ex-
ceptions.    On that report the Superior Court entered a final
decree for the plaintiff, from which the defendant took the ap-
peal now before us.

The bill is a bill of equitable replevin, brought by a wife to
recover from the defendant her personal property (consisting
principally if not entirely of wedding presents) which had been

pledged with the defendant by the plaintiff's husband, on June 3, 1902 (together with some personal property owned by the husband), as security for a loan of $2,500 due from the husband to the defendant.

The plaintiff and her husband are English people who came to this country in 1900, bringing with them the personal property here in question. The husband was at first employed in a mill at Lowell, and there made the acquaintance of the defendant. In February, 1902, the defendant lent the husband $800, and again between February and May of that year $700 more, without security. In May of that year the husband and the plaintiff, being desirous of returning to England and not having the money necessary to pay their debts and the expense of the return, the husband applied to the defendant for a further loan of such amount that the whole amount due would be $2,500. The defendant agreed to make the further advance if he received security for what had been lent already as well as for the fresh advances. The husband agreed to give as security "his household goods at Lowell," and asked the defendant to come to Lowell and inspect them. The plaintiff was not present at this conversation.

In accordance with the arrangement made with the plaintiff's husband, the defendant went to Lowell on May 17, 1903, and inspected the goods which the husband had agreed to give him as security, at the house in which the plaintiff and her husband then were living. He found the most valuable of the articles here in question consisting of silver, cutlery, bric-à-brac and china, collected together in one room. The silver and cutlery had been polished by the plaintiff and her husband " shortly " before this visit, and were at that time " arranged in boxes and cases as though for display." The plaintiff was present and " exhibited " several articles to the defendant, called his attention to their beauty and value, and said that they were worth $5,000. She told him that they were her wedding presents, and spoke of " the whole collection as ' our ' goods."

The plaintiff testified that the articles were collected together in one room " incidental to cleaning " and for the convenience of the packers and not for the purpose of exhibiting them as security for a loan; that she exhibited them to the defendant

as a matter of family pride to show that they were not desti-
tute although for the moment "in somewhat straitened circum-
stances," and that she had several neighbors in to see them the
day before they were exhibited to the defendant.

At this interview the plaintiff and her husband " were talking
of where they should store the goods, and they mentioned stor-
ing them in a regular public storage-house." Thereupon the
defendant. said : " It is no use of these things going into a public
storehouse, when I can store them at my place, and it will cost
nothing, and will be safer. We will have them under our own
eye." To this the plaintiff assented, and the defendant gave
her husband directions in her presence as to marking the con-
tents of the cases in which the goods were to be packed and as
to shipping them to the defendant's house in Milton.

On May 19 the plaintiff's husband made a list of the articles
including those here in question.

On May 31, 1902, all the goods were delivered to a carrier
and were taken by him to the defendant's house in Milton,
where they now are. On the same day the defendant's attor-
ney drew a written agreement of pledge of all the goods men-
tioned in the list, which agreement was executed by the
husband on June 3, 1902. On the following day the plaintiff
and her husband sailed for Europe.

In November, 1903, the plaintiff returned to the United
States. At that time her husband was in the defendant's em-
ploy. He left that employment in April, 1904. Soon after
leaving the defendant's employ the husband asked for the goods,
as he and his wife were going to housekeeping. The defendant
refused to deliver them up until the loan was paid. A few days
later an oral demand for the goods was made by an attorney in
the name of the husband.

On May 5, 1904, the same attorney, in behalf of the plaintiff,
demanded the goods here in question, stating that they belonged
to her, and upon the defendant's refusal this bill was brought.

The master found that the defendant acted throughout in
good faith, believing that the husband was the owner of the
goods and had the right to pledge them as he did.

The master ruled "that the complainant was not estopped by
her acts to deny that she assented to the transactions relating

to said goods between her husband James Kershaw and the respondent," and " that she could maintain her bill and was entitled to recover possession of the goods enumerated in the schedule thereto annexed." After the statement of that ruling the report continues, and ends in these words : " At the request of the respondent, and under the objection of the complainant, I find that with regard to all transactions herein reported relating to the goods in question, except the making affidavit before the United States Consul at Liverpool, and the pledging of the goods to the respondent, Mr. Kershaw acted as the agent of the complainant. There was no evidence that the respondent knew of any transactions with regard to the goods other than that in which he was personally concerned.

" At the request of the respondent, and under the objection of the complainant, I further find that the complainant had no actual knowledge at the time of her husband's pledging said goods to the respondent ; that she never expressly authorized her husband to pledge them, and never expressly assented to, or ratified the pledge after it had been made. But if such knowledge, assent and ratification can be implied in law from the agency of her husband and her own acts as herein reported, then I find that she cannot maintain her bill."

The defendant's first contention is that the plaintiff is estopped because she clothed her husband with possession of the goods without reserve, and the master has found that in regard to all transactions stated in his report except the affidavit at Liverpool and the pledging of the goods, the husband acted as agent of the plaintiff. The transactions specified by the defendant as those on which he relies in this connection are the two demands made by the husband for the goods, one in person, the other through the attorney who afterwards acted for the plaintiff.

But in the first place the plaintiff did not clothe her husband with the possession of these goods without reserve, and in the second place she would not have been estopped if she had. An owner of personalty is not estopped from claiming his property in it by putting it in the possession of another, no matter what the other may do with it and no matter what reliance may be put by a third person on the possession. The cases are col-

lected in *Rogers* v. *Dutton,* 182 Mass. 187. There is nothing to the contrary in the cases of *Jacobs* v. *Hesler,* 113 Mass. 157, and *Clark* v. *Patterson,* 158 Mass. 388, relied on by the defendant. What was decided there was that a wife has no claim against her husband's estate if she entrusts money or negotiable securities to him without evidence as to the terms on which they were entrusted.

The other contention made by the defendant consists in an argument showing that the facts stated in the master's report warranted a finding that the plaintiff in fact knew of the pledge of her property by her husband and either consented to it originally or afterwards ratified it. We agree with that contention, but it is not material here. In other words we do not agree with the construction put by the defendant on the master's report. The master's report concludes with a finding that the plaintiff cannot maintain her bill if knowledge on the part of the plaintiff as to her husband's pledging her goods " can be implied in law from the agency of her husband and her own acts as herein reported." That means if her knowledge is to be implied as matter of law. It does not mean if her knowledge can as matter of law be implied in fact. Whether it was or was not to be implied was a question of fact for the master, on which he has found against the defendant. The entry must be

*Decree affirmed.*

The case was submitted on briefs.

*W. F. Merritt & N. T. Merritt, Jr.,* for the defendant.
*W. M. Lindsay,* for the plaintiff.