### TRIMBLE v. SMITH.

No. 14778—Opinion Filed April 8, 1924.

1. **Property — Possession of Personalty — Presumption of Ownership.**

A rebuttable presumption of ownership, which, in the absence of evidence to the contrary, the law will assume to be correct, arises from possession of real or personal property.

2. **Same.**

Possession of personal property, if unexplained, is prima facie evidence of ownership in the possessor.

3. **Same—Declarations of Possessor as Estoppel Against True Owner.**

Under the issue of estoppel, the declarations of the possessor, made out of the pres-

ence of the real owner, are not sufficient to estop the real owner, from claiming title and right of possession to the property, unless such declarations are shown to have thereafter been brought to the knowledge of such owner and he acquiesced therein, in such a manner as to invest the possessor with indicia of ownership.

**4. Same—Effect of Placing Chattels in Hands of Another.**

The mere placing of one's property in the hands of another does not estop the owner from claiming the ownership thereof.

**5. Appeal and Error—Harmless Error— Instructions.** •

Although an instruction given may misstate the law, if others are given, which, when taken together with the improper one, make it apparent that the jury was not misled thereby, the same will not constitute reversible error.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Dorothy McMichael Smith against Charles I. Trimble, for the recovery of jewelry of the value of $8,250. Judgment for plaintiff. Defendant brings error. Affirmed.

Biddison & Campbell, for plaintiff in error.

Phil W. Davis, Jr., for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Tulsa county by Dorothy McMichael Smith, defendant in error, plaintiff below, against Charles I. Trimble, plaintiff in error, defendant below, for the recovery of possession of five articles of jewelry, or the value thereof in the total sum of $8,250.

The parties will be referred to as plaintiff and defendant as they appeared in the lower court.

The plaintiff alleged, among other things, in her petition, that on or about March 30, 1922, the defendant, Charles I. Trimble, wrongfully detained, and still detains, in his possession the five articles of jewelry sued for, which are described and valued separately in the petition, the total sum being $8,250; that said articles consisted of three jeweled rings, one diamond bar pin, and one diamond lavalier; that she was the owner of the jewelry and entitled to immediate possession thereof, and had made a demand on the defendant, Charles I. Trimble, for the

property; that he refused to deliver possession of it to her: that he was insolvent; that the defendant had deposited said jewelry in a safety deposit box in the First National Bank of Tulsa, and that he had access to said box and unless he was enjoined from doing so, he would dispose of it, and that plaintiff was unable to give replevin bond in said action and prayed for a return of the jewelry, or the value of same, and for an injunction against the defendant and the bank to prevent any disposition of the jewelry, and for general relief.

An injunction was granted, but was afterwards modified and by an order of court the bank was made custodian of the property and the temporary injunction dissolved.

The defendant answered by way of general denial and set up the further defense that the plaintiff allowed one T. G. Smith to assume apparent ownership of four of the articles of jewelry, described in the plaintiff's petition, to wit, two rings, one bar pin, and one lavalier, for the purpose of making a transfer of them, and that said articles of jewelry were pledged to the defendant by said T. G. Smith, on the 17th day of October, 1921, to secure a loan of $3,025, made in advance by the defendant to the said T. G. Smith; that the said defendant received said property from the said T. G. Smith in good faith, and in the ordinary course of business, and for good value, and that no part of the money loaned had been paid, although past due; that plaintiff was estopped from setting up any title in herself to defeat the pledge of said property as aforesaid; that said loan was made orally and not for any specified time, but was payable within a reasonable time, which reasonable time had expired, and that said $3,025 with interest at six per cent. was due and owing to the defendant, for which he was entitled to judgment, and prayed that his lien be foreclosed and the jewelry sold to satisfy judgment for the amount of his recovery.

The plaintiff replied by way of general denial.

Trial was had to a jury. which resulted in a verdict in favor of the plaintiff for the return of the jewelry, or the value of the four pieces, fixed separately on each piece, the total sum of the whole being $7,050.

Motion for new trial was filed, heard, and overruled and exceptions reserved.

Judgment was pronounced upon the verdict of the jury for a return of the property sued for, or the value thereof, which was fix-

ed separately on each article, or in the total sum of $7,050, and ordered the custodian, the First National Bank, to deliver to plaintiff the property held by it as such custodian and for the costs of the action, from which judgment of the court the defendant appeals to this court for a review of said judgment.

Counsel for defendant in their brief set up five assignments of error, the first on overruling motion for new trial; second and third, refusal of the court to give certain requested instructions, which are fully set out; fourth and fifth, to the giving of certain instructions, which are also set out; but, they content themselves with discussing the same under the following head:

"We will discuss all of the assignments of error together for they are all based on the refusal of the court to submit to the jury in a proper manner the evidence of the plaintiff in error and his witnesses as to the fact that T. G. Smith borrowed money from the plaintiff in error and pledged the diamonds as security for the payment of the money; that he had had the diamonds for some weeks previous to that time, and had tried to sell same, and had declared same to be his.

"This evidence should have been submitted to the jury, but the court not only refused to give the proper instruction to the jury on the evidence, but his instructions to the jury took away from them any and all evidence of an apparent ownership and estoppel and submitted to them the single question as to whether the defendant in error was the owner."

The evidence in the case discloses that the jewelry in question consisted of articles of feminine adornment and the plaintiff's testimony showed conclusively, in our view of the case, that she was the owner of said jewelry; it further tended to show that the jewelry had been worn by her at the home of defendant, and that the defendant knew the jewelry to be hers; that some time about the 15th of September, 1921, the defendant had suggested to her on account of there being so many holdups and robberies in, around, and about Tulsa that it was unsafe for her to wear and keep the jewelry about her person, and suggested to her that she put it in his safety deposit box for safekeeping; that she went to Minneapolis and when she came back she stopped over in Kansas City and that T. G. Smith, her former husband, from whom she had been divorced, came direct from Minneapolis to Tulsa and she gave the jewelry to Smith to take to the defendant to put in his safety deposit box, and that three days later, on her return to Tulsa, she asked the defendant if he got the diamonds all right and he said that he did and that they were up there and she could keep them there as long as she wanted to; that she was a frequent visitor in the home of defendant when he lived in West Plains, Mo., and since he had moved to Tulsa, and had worn all five pieces of the jewelry, sought to be recovered, in the home of the defendant, and he had admired them and said that he wished he could get the pearl ring for his wife; that some time in March, thereafter, she asked for the jewelry and she first learned from defendant that he was holding them for some money he had loaned Smith and the defendant refused to turn them over to her.

The record testimony in the case showed that T. G. Smith and defendant were engaged in the oil business, in a company known as the Kansas-Oklahoma Oil Company, and that $2,000 of the amount, claimed to have been loaned by the defendant to Smith, was borrowed by defendant, as shown by letter from defendant to Smith, dated November 22, 1921; that on the same day and date Smith paid A. O. Orrison, a well driller, $1,650 by check for drilling a well on the company's property; that a few days before the bringing of this action, defendant wrote a letter, dated March 24, 1922, to T. G. Smith, his partner, in which he said:

"T. G. Smith,
    "Tulsa, Okla.

"Dear sir: You will please file my claim, Against the Kansas Oklahoma Oil Company, for the Amount of 3,025.00 Three Thousand and Twenty Five Dollars Cash advanced (Actual Cash) to the company.
            "Respectfully,
                "(sgd) C. I. Trimble."

The said amount being exactly the amount claimed by defendant to be owing to him by the said T. G. Smith; that on December 19, 1921, T. G. Smith acknowledged an indebtedness to defendant in the sum of $2,725 for "money advanced me for the Oklahoma-Kansas Shallow Oil Company to pay for drilling and material," admitting the amount was long past due, on which he agreed to pay the defendant one per cent. per month for the money.

The defendant's testimony was to the effect that he had loaned money from time to time to T. G. Smith, and that on the 17th day of October, 1921, he demanded security for the money already advanced and money to be advanced, and that Smith brought four of the articles of jewelry in dispute to his office and he took them to a jewelry store

to have the same appraised and then they were taken to the First National Bank and deposited in defendant's safety deposit box as a pledge to him for the repayment of the money already advanced and the money yet to be advanced, and that this was the first time he ever saw the jewelry, and Smith claimed it to be his own and the guard of the vault testified that, in a conversation at the bank at the time the jewelry was deposited, the defendant and Smith agreed that it was security for a loan, made by defendant to Smith. Two other witnesses testified, in substance, to the declarations of ownership by T. G. Smith to defendant. The other witnesses, on part of the defendant, testified; in effect, that some time in the latter part of August, 1921, T. G. Smith had the jewelry at a hotel and was trying to sell it at that time.

The plaintiff, in rebuttal, testified that she was in St. Louis in the month of August, 1921, and had all of her jewelry with her, that she went from there to her sister's in Hattiesburg, Miss., and remained there until about the 15th of September, and that T. G. Smith did not have said jewelry in his possession at any time during the months of August and September, 1921; that the defendant, a few days before Christmas, 1921, suggested that she put a watch and other jewelry, which she had, together with a ring belonging to her sister, with the diamonds in dispute in this case in his safety deposit box in the bank.

The above is a fair statement of the material testimony in this case and it was within the province of the jury to say what evidence it would believe and what it would not believe and to reconcile the conflicting statements of witnesses, if possible, and what weight it should give to the testimony of each witness, and by its verdict it is shown that the jury evidently believed the testimony of the plaintiff in this case and we cannot disturb on appeal or invade the province of the jury, if there is any testimony reasonably tending to support the verdict, unless there appears in the record some error of law committed by the court, as complained of by counsel for the defendant, in the instructions given by the court to the jury in the instant case.

The court gave 12 instructions; after charging the jury that the burden of proof was upon the plaintiff to prove by a preponderance of the evidence all the material allegations of her petition, in his third instruction, instructed the jury to the effect that the possession of personal property raised a presumption of ownership in the possessor of the property, but that such presumption was not conclusive but might be rebutted, and in his fourth instruction the court instructed the jury to the effect that it could consider as evidence in the case the acts and declaration of the party in possession of the property, in order to determine the ownership of such property, and the fifth instruction of which attorneys for defendant complain, is as follows:

"5. You are instructed, gentlemen of the jury, that the court holds as a matter of law that no competent evidence has been submitted for your consideration on the defense of estoppel, and on said account you are instructed that you will not consider that phase of the case.

"The sole issue for your determination herein is whether or not the plaintiff is the owner of the property in question and entitled to the possession thereof, and whether, as plaintiff alleges, she intrusted the property to T. G. Smith for the sole purpose of leaving the same with the defendant herein for purposes of safe-keeping."

And the sixth instruction, of which attorneys for defendant complain, is as follows:

"6. Bearing in mind the foregoing instructions, you are told, gentlemen of the jury, that if you find in this case by a preponderance of the evidence that the plaintiff herein was, on the date set out in the petition, the owner of the diamonds in question, and that she turned same over to one T. G. Smith for the sole purpose of leaving same with the defendant for safe keeping in his safety deposit box, you will find the issues in favor of the plaintiff.

"On the other hand, if you should find that the diamonds in question were not the property of the plaintiff, your verdict will be for the defendant."

And the two instructions, offered by defendant and refused to be given to the jury by the court, are as follows:

"You are instructed, gentlemen of the jury if you should find in this case that the plaintiff herein intrusted to the care and keeping of one T. G. Smith the property involved in this litigation, for the purpose of permitting said T. G. Smith to use the same for his purposes, and that the said T .G. Smith took said property and pledged it to secure a loan of money, then your verdict will be for the defendant."

"You are instructed that if the real owner of the property has so acted as to clothe the seller or pledger with apparent authority to sell or pledge, then the owner is precluded from denying that the person who so pledged the property had the right to so pledge it against one who has acted in good

faith and advanced money on said property in reliance on the apparent authority of the party in possession."

The sole and only testimony in the case, upon which the defendant acted, was that as testified to by himself in his behalf, of the conversation between himself and T. G. Smith, at the time the jewelry was placed in his possession. There is no evidence that the defendant ever knew of the facts testified to about T. G. Smith having said jewelry in his possession at the hotel, during the latter part of August, 1921, and the mere fact that Smith had possession of the jewelry, claiming it as his own, if unexplained, might be considered as prima facie evidence of ownership or possession, but, if it is consistent with ownership in another, it is not conclusive, and whether the person in possession is the owner depends not upon the mere fact that he is in possession, but upon the nature and character of that possession, and this, if we understand it, is as far as this court goes on this point in the case of Ragan v. Citizens' State Bank of Foraker et al., 38 Okla. 65, 131 Pac. 1093. In the instant case, the testimony of the plaintiff, which the jury evidently believed, fully explained how this jewelry came into possession of Smith, that it was given to Smith for the express purpose of turning it over to the defendant for the purpose of placing it in his safety deposit box for safe keeping for the plaintiff, and that this action of Smith's was in conformity with a pre-arranged understanding between her and the defendant, that she would so place said jewelry with him to be placed in his safety deposit box for safe-keeping.

The other part of the decision in the case, supra, is to the effect that declarations of the possessor, although not made in the presence of the real owner, are admissible in evidence to determine the nature of such possession. This evidence was admitted by the court and defendant was not deprived of this testimony and the jury had the benefit of the declarations of T. G. Smith upon this point.

The other two cases from this court, cited by counsel for defendant, being Midland Valley Railroad Company v. Larson, 41 Okla. 360, 138 Pac. 173, and U. S. Supply Company v. Gillespie, 65 Okla. 198, 166 Pac. 139, both contain the following language:

"A rebuttable presumption of ownership which, in the absence of evidence to the contrary, the law will assume to be correct arises from possession of real or personal property."

It will be observed that this court has said that a "rebuttable presumption" arises from possession, in the "absence of evidence to the contrary," and, in the Ragan Case, supra, this court said that possession of personal property, "if unexplained," is prima facie evidence of ownership in the possessor. The instant case does not come within either of the case cited, for the reason that, in this case, the possession of T. G. Smith is explained by the owner and there is not an absence of evidence, but, on the contrary, there is abundant evidence that the title, ownership, and right of possession were in the plaintiff in this action. The only claim of the defendant is that T. G. Smith stated to him, while in possession of the jewelry, that he was the owner thereof, but the testimony of the plaintiff is that he had personal knowledge of her ownership of the property, and knew that she was going to place the same with him for safe-keeping, and the testimony of plaintiff and Samuel Diamant, a jeweler of Kansas City, is positive that the title, right of possession, and ownership were in the plaintiff, and, in our opinion, this testimony, in effect, destroyed the presumption contended for by the defendant, under the very authorities cited by counsel for defendant in their brief. As heretofore stated in this opinion, the defendant had the full benefit of the testimony as to the declarations of T. G. Smith and the court, in its third and fourth instructions, submitted this phase of the case to the jury, and in our opinion gave the defendant the full benefit of the question of presumption of ownership.

There was no evidence upon which the doctrine of estoppel could operate against the plaintiff in this case, for she neither by her own act nor deed misled the defendant to his detriment.

In the case of Kershaw v. Merritt, 194 Mass. 113, 80 N. E. 213, it is said:

"An owner of personalty is not estopped from claiming it by putting it in the possession of another, no matter what the other may do with it and no matter what reliance may be put by a third person on the possession."

It is our opinion that the instructions given were sufficient to cover the issues in this case, and that the court did not commit reversible error in the giving of, or in his refusal to give, the instructions requested.

This court, in the case of Snyder v. Stribling, 18 Okla. 168, 89 Pac. 222, held:

"Although an instruction given may misstate the law, if others are given which when taken together with the improper one

make it apparent that the jury was not misled thereby, the same will not constitute reversible error."

The record further shows, both in the oral and documentary testimony, over the signature of the defendant, himself, that the money he claims to have advanced to T. G. Smith was for the purpose of paying for drilling oil wells and for supplies on the properties of the Kansas-Oklahoma Oil Company, in which the defendant and T. G. Smith were interested as a joint enterprise, and certainly it would be unjust for this former husband and the defendant to reimburse themselves out of the jewelry of plaintiff without her knowledge and consent merely upon a declaration of the former husband that the jewelry belonged to him and more particularly when there is positive evidence that the defendant had previous knowledge that the jewelry in this action belonged to the plaintiff and was going to be placed with him for safe-keeping by a previous arrangement between him and the plaintiff.

We are, therefore, clearly of the opinion that the verdict of the jury was correct, and the judgment of the court in this case is free from any reversible error and is right and just and should be and is hereby affirmed.

By the Court: It is so ordered.