## GARRISON *et al.* v. LATHAM *et al.*

No. 2210, Okla. T.   Opinion Filed May 12, 1909.

(103 Pac. 609.)

1.   **ESTOPPEL—Equitable Estoppel—Grounds.** G., the owner of certain personal property, entered into a contract relating thereto with L., by the terms of which G. agreed to sell to L. said personal property for and in consideration of the payment of $500 upon the signing of said agreement, and $625 and the execution and delivery of three bankable promissory notes within 10 days thereafter; a certain bank to decide whether said notes were bankable or not. Before the expiration of said 10 days, L., with the consent of G., took possession of said personal property, paying said sums of $500 and $625; G assigning to him certain insurance policies covering said property. Thereafter, and within said period of 10 days, and before said bank passed upon the bankability of said promissory notes, G. being present and cognizant of the terms and conditions thereof and making no objections thereto, L. and H., for a valuable consideration, made and entered into a lease upon the building · wherein said personal property was situated, which instrument was also a chattel mortage on said property to secure the payment of rent under said lease for a period of five years. **Held,** that G. is estopped from denying the validity of said chattel mortgage in an action wherein he sought to have a lien fastened upon said personal property for the purpose of securing payment of said three promissory notes.

2.   **SALES—Conditional Sales—Record.** An instrument in writing, signed by G. and L., wherein it is stated that G. is the owner of all the personal property described in a bill of sale thereto attached, and is desirous of selling the same for the sum of $4,500, payable one-fourth cash, one-fourth in three months, one-fourth in six months, and one-fourth in nine months, deferred payments to bear interest at the rate of 8 per cent. per annum, and in consideration of the premises the parties agreed that G. would execute said bill of sale and place the same in escrow with the Commercial National Bank, and that said Commercial National Bank

shall deliver said bill of sale to L. upon the payment to said bank for G. of the said three deferred payments above set forth, is in effect a conditional sale of said personal property; and when a copy of said instrument is deposited in the office of the register of deeds, in and for the county wherein the property is kept, it constitutes constructive notice to subsequent purchasers or incumbrancers that the title to such personal property is retained in the vendor until the deferred payments have been made.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; B. F. Burwell, Judge.*

Action by Kathaline Garrison, administratrix, and Harvey D. Garrison, administrator, of the estate of G. W. Garrison, deceased, against A. F. Latham and others, in which action William T. Hales intervened. Judgment for defendants, and intervener and plaintiffs bring error. Judgment modified.

*F. G. Hays, J. H. Grant, E. G. McAdams,* and *John H. Shirk,* for plaintiffs in error.

*J. H. Everest* and *C. F. Smith,* for defendants in error.

KANE, C. J. This was a suit upon certain promissory notes and to establish a lien upon certain personal property to secure payment of the notes. The suit was originally instituted by G. W. Garrison, plaintiff in error herein, as plaintiff, against A. F. Latham, G. Thede, and J. Zindel, and afterwards William T. Hales filed a petition of intervention, and the defendants below and the intervener are defendants in error in this court. After the issues were made up, the cause was referred to a referee to make findings of fact and conclusions of law. After the referee filed his report, counsel for the defendants and the intervener filed a motion requesting the court to confirm the same and to render judgment as therein recommended, and counsel for plaintiff filed a motion requesting the court to set aside the conclusions of law found by the referee and render judgment in favor of the plaintiff upon the findings of the referee, upon the ground that the facts so found did not warrant such conclusions of law and said conclusions of law are contrary to the facts found. The court, in passing upon the

foregoing motions, found that the report of the referee should be sustained and approved, and that the motion of plaintiff to reject the same and his exceptions thereto should be disallowed, and that judgment should be entered in said action as recommended by said referee. Thereupon it was ordered and adjudged by the court that the plaintiff shall be barred of all claim, right, title, and interest in and to the personal property involved in this action, and forever enjoined from setting up or claiming any right, title, interest, equity, or demand in said personal property, or any part thereof, and that said cause be dismissed with prejudice and with costs taxed to said plaintiff.

From the foregoing statement it is apparent that the facts found by the referee are accepted by the parties to this suit as the facts of the case, and the only question for this court to decide is whether the referee drew correct conclusions of law from them. The facts as found by the referee, in so far as it is necessary to notice them for the purpose of this opinion, disclose:

That W. T. Hales, the intervener, for a long time prior to the commencement of this suit, was the owner of the building in which the property involved was situated, which building had been used for the purpose of conducting a hotel. That prior to the 4th day of February, 1905, Hales entered into a lease-contract with one Burt, leasing the premises to said Burt for a stipulated rental therein named, which lease was to, and did expire, October 1, 1905. That by the terms of said lease said Hales reserved for the rental agreed to be paid a lien upon the personal property, furniture, and effects of said Burt, which were in said hotel. That said lease was duly recorded in the office of the register of deeds, both as a lease and as a chattel mortgage. That thereafter the plaintiff, G. W. Garrison, acquired ownership of said property by purchase from said Burt, which property was delivered to said Garrison, and he was let into possession of said hotel building wherein it was situated and was accepted by Hales as his tenant under a lease made to Burt. That the plaintiff bought said property from said Burt subject to said lien in favor of Hales, and kept said

property under said lease, and paid rent according to the terms thereof; no new lease having been executed by said Hales to said Garrison. That said Garrison continued to keep said building and use said furniture therein for hotel purposes, after said purchase from said Burt, until the 4th day of February, 1905. That on the 4th day of February, 1905, Garrison entered into a written contract with the defendant A. F. Latham, by the terms of which he agreed to sell to him all of the furniture and fixtures aforesaid and to assign the lease that said Garrison had for the said premises to said Latham for and in consideration of $500, upon the signing of said agreement, the payment of the further sum of $625 within 10 days from February 4, 1905, and the executing and delivering within 10 days from February 4, 1905, of three bankable notes; the Commercial National Bank of Oklahoma City to decide whether said notes were bankable or not, said notes to be in the sum of $1,125 each, due in three months, six months, and nine months, from and after February 4, 1905, all bearing interest at the rate of 8 per cent. per annum until paid, and the said Latham agreeing with Garrison and Hales to pay rent to Hales, the owner of the building, at the rate of $300 per month, from the 1st day of February, 1905, thus relieving said Garrison from the payment of rent for the month of February. That at the time of signing said contract Latham paid to Garrison the $500 provided for therein and signed three promissory notes in the sum of $1,125 each of even date therewith, due and payable in three, six, and nine months, respectively. That these notes at said time, together with a copy of the contract, were delivered to the plaintiff, G. W. Garrison; that the intervener, W. T. Hales, read said contract at the time of its execution, and was fully conversant with the terms and provisions of same.

That after the execution of said contract, and prior to the 10th day of February, 1905, possession of said personal property was delivered by Garrison to the defendant Latham, and said Latham began to exercise dominion and ownership over the same; said Garrison assigning to him certain insurance policies thereon.

That on the 11th day of February, 1905, Latham paid Garrison the further sum of $625 in cash, making a total of $1,125 paid on said contract. That on the 11th day of February, 1905, after banking hours, the plaintiff, G. W. Garrison, the defendant, A. F. Latham, and the intervener, W. T. Hales, went to the Commercial National Bank and there met one John Hughes, who was cashier of said bank, and the three promissory notes signed by the said Latham, and delivered to the said Garrison on the 4th day of February, under said contract, were presented to the said John Hughes for the purpose of causing the Commercial National Bank to pass upon the question as to whether or not said notes were bankable. That said Hughes declined to consider and hold that said notes were bankable notes, but gave it as his opinion that they were not. That thereupon said Hughes drew up a certain contract, which is in words and figures as follows:

"This indenture witnesseth: That, whereas, G. W. Garrison is the owner of all of the personal property situate in the Hales building, as described in the bill of sale hereto attached, and is desirous of selling the same to A. F. Latham, of Oklahoma City, and who has agreed to purchase same for the sum of $4,500, payable one-fourth cash, one-fourth in three months, one-fourth in six months, one-fourth in nine months, deferred payments to bear interest at the rate of eight per cent. per annum: Now, therefore, in consideration of the premises, the parties hereto agree that said G. W. Garrison will execute said bill of sale and place the same with the Commercial National Bank in escrow, and that said Commercial National Bank shall deliver said bill of sale to said A. F. Latham, upon the payment to the said bank for and in behalf of the said G. W. Garrison of the said three deferred payments above set forth. In witness whereof the parties hereto have hereunto set their hands this 11th day of February., 1905. G. W. Garrison. A. F. Latham. Witnesses: W. T. Hales. T. H. Shipp."

This instrument was attached to the bill of sale, both of which instruments were to remain in escrow in the Commercial National Bank until such time as the personal property mentioned in the bill of sale was fully paid for, whereupon the bank was authorized to deliver the same to said A. F. Latham. That the

intervener, Hales, did not read over the last-executed contract which he witnessed, and did not know the contents thereof; but he heard Mr. Hughes, Mr. Garrison, and Mr. Latham speaking about writing up a contract pertaining to said transaction before the same was executed, and at that time Hales advised said Hughes, Garrison, and Latham that he held and claimed a chattel mortgage on all the personal property in the hotel, for rent becoming due under the terms of a lease which he claimed to have previously made with Latham for the period of five years. That on the 13th day of February, 1905, at about the hour of 11:00 o'clock a. m., said last-executed instrument, with the former bill of sale attached thereto, were duly filed for record in the office of the register of deeds of Oklahoma county. That prior to going to the Commercial National Bank on the 11th day of February, 1905, the intervener, W. T. Hales, and the defendant A. F. Latham, made and entered into a written contract of lease for the building known as the "Illinois Hotel," wherein the property involved was situated, whereby said Latham agreed to pay said Hales for the period of five years the sum of $18,000, in monthly installments of $300 per month, and it was further stipulated that said Hales should have a lien upon the furniture involved in this action for the faithful performance of the terms of said lease and the payment of rents to be and become due thereby and thereunder. That said Garrison was cognizant of the terms and conditions of said lease. That he either read it over, or heard it discussed, but could not remember whether same contained a mortgage clause. That he offered no objection and said nothing by way of approval or disapproval at the time the same was entered into, and made no claim that the said Latham did not own the property, or that he had not the right to mortgage or incumber the same. That said lease was filed for record in the office of the register of deeds of Oklahoma county on the 13th day of February, 1905, at the hour of 9:05 a. m., both as a lease and also as a chattel mortgage. That the plaintiff, G. W. Garrison, accepted the three notes dated February 4, 1905, for $1,125 each,

and on the 11th day of February, 1905, on which date he delivered them to the Commercial National Bank, with his indorsement thereon, deposited them as collateral security and for the purpose of collection in connection with an indebtedness pre-existing in favor of said bank, and as against the said G. W. Garrison, and that said bank has been in possession of said three promissory notes ever since, and its successors in interest, the State National Bank, with which the said Commercial National Bank was consolidated, is now in possession of said notes, holding same as collateral to an indebtedness due it from said G. W. Garrison. That said indebtedness from said Garrison is not yet paid, and said three promissory notes for $1,125 each are all past due and wholly unpaid. That the defendant A. F. Latham, after he went into possession of said hotel, kept the same, together with the furniture therein, for the purpose of conducting and conducted a hotel for a period of about three months, at the expiration of which time he sold and delivered possession of the same to E. L. Ralls, who at the time he purchased same did not know of the amount that was due on said notes, at said bank, or the amount that had been paid thereon. That the said Latham sold said property to said Ralls upon the same terms and conditions upon which it was sold by Garrison to Latham, and that the said Ralls went into possession of said premises and the furniture in said hotel, and used and occupied the same for hotel purposes, until he sold it to one Woodford Mabry. That the said Ralls sold his interest in said furniture to said Mabry, for and in consideration of $100 cash, and a note for the further sum of $650. That, at the time Ralls sold to Mabry, he made no explanation to him of the condition of the property or the claims with reference thereto, except that he told Mabry he was selling him his equity with the understanding that the three notes executed by Latham were due at the bank. That Mabry remained in possession of the property and used the same for the conducting of a hotel until the 22d day of August, 1905, at which time he executed a written contract for the sale of the property to the defendants Thede and

Zindel; the consideration thereof being $2,500 in cash, $1,000 in cash being paid by the defendants Thede and Zindel on August 22, 1905, and the remaining $1,500 paid within from three to five days thereafter. That after the purchase price was paid by the defendants Thede and Zindel, the possession of the property was delivered to them about September 1, 1905, ever since which time they have been in possession, and still are in possession, of said property and all thereof, using the same for the purpose of conducting a hotel in the building of said intervener. That the appraised value of said property on January 3, 1906, was and is $5,184.40, which the referee found to be the reasonable value of said property.

Under the foregoing findings the referee submitted his conclusions of law, as follows:

"That the executory agreement dated February 4, 1905, introduced in evidence as Exhibit B, providing for the sale of the personal property in controversy, was fully executed and performed by A. F. Latham, by payment within the time limited of $1,125 in cash and the execution of three promissory notes dated February 4, 1905, for $1,125 each, and that the said Garrison, by indorsing the same and depositing the same with the Commercial National Bank as collateral security to the payment of the indebtedness owed by him to said bank, fully and completely accepted said notes, and the said Garrison thereby waived any right or claim he had under said contract by so accepting and indorsing said notes, that they should be bankable, that by accepting said $1,125 and the said three promissory notes and delivering all the personal property of A. F. Latham, and by the indorsing over to the said Latham the insurance policy upon said furniture, and causing the same to be written to the said Latham, that the said Latham became the absolute owner of said personal property, and all thereof, to the exclusion of the said Garrison."

Since the rendition of this judgment, G. W. Garrison died, and the cause has been revived in the name of Kathaline Garrison, administratrix, and Harvey D. Garrison, administrator, of his estate.

We know of no reason why this conclusion of law should be disturbed. The effect of it is to give the intervener, Hales, a

prior lien upon the furniture in the hotel to secure the payment of the rent as it fell due, and this, from the findings of fact, he would be entitled to, whether the first transaction between Garrison and Latham was construed to be an absolute or conditional sale. If the sale was absolute, there can be no question but Latham had a right to mortgage the property to Hales to secure the payment of rent; and, if it was conditional, Hales would be protected by section 4179, Wilson's Rev. & Ann. St. 1903, which provides:

"That any and all instruments in writing, or promissory notes now in existence or hereafter executed, evidencing the conditional sale of personal property, and that retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept, and when so deposited, shall be subject to the law applicable to the filing of chattel mortgages; and any conditional, verbal sale of personal property, reserving to the vendor any title in the property sold, shall be void as to creditors and innocent purchasers for value."

The findings of fact of the referee discloses that the lease and mortgage of Hales were recorded prior to the recordation of the contract and bill of sale between Garrison and Latham, and his conclusions of law based on such findings are to the effect that Hales, while he had knowledge of the contents of the first bill of sale, did not read and did not know the contents of the contract entered into between Garrison and Latham on the 11th day of February, 1905. The referee also found as a conclusion of law that Garrison, by reason of his conduct at the time the lease-mortgage was executed, is estopped, as far as the intervener is concerned, from denying that Latham had lawful right to make and execute a mortgage on said property as his sole property, that the said lease is valid and binding between said Hales and said Latham, and the chattel mortgage feature of it is a valid lien upon the personal property to secure the payment of such sums of money

as may become due and payable under the lease. This part of the report of the referee is correct, and was properly approved by the court below. · The findings of the referee do not make it entirely clear that the purchasers of the personal property subsequent to Ralls held the hotel under the lease-mortgage between Hales and Latham; but as the case was tried and briefed upon the theory that, if the lease-mortgage was good between Hales and Latham as against the claim of Garrison, it would also be good between Hales and the subsequent purchasers of the personal property, and lessees of the hotel, we have adopted that theory in this court.

As to the instrument hereinbefore set out in full, the referee found: That it "did not reserve the title in said Garrison to said property, or any part thereof, and that the recording of same did not impart constructive notice to any of the purchasers. of said property, neither did it impart constructive notice to the defendants Thede and Zindel that the said written contract is the only contract upon which the said G. W. Garrison is entitled to rely, and it expressly provides that the bill of sale and the con-. tract shall be and remain in escrow until the three notes or the three sums of money evidenced by said three notes should be paid to said Commercial National Bank, as specified in said contract, at which time they should be delivered to the said Latham. That this contract so recorded was executed after the other contract dated February 4, 1905, had been fully complied with by Latham, and the property delivered to said Latham, and the title fully vested. That same is wholly insufficient as a chattel mortgage, and same is wholly insufficient as a title note, or contract. That same does not provide anywhere in said contract that the title shall remain vested in the said Garrison, to the property or any part thereof, until the said notes shall be paid, but only that the bill of sale, which is one of the evidences of title, shall be and remain in possession of said bank, until the said three notes are paid. That, in view of the express terms of said agreement, the same should remain in escrow in said bank until paid. The fact

that the same was recorded justifies the presumption and belief that the three notes had been fully paid, and that said bank had delivered same in accordance with said agreement to the person entitled to its delivery."

We cannot agree with the referee in this conclusion of law. Even admitting that the first instrument vested the entire title to the property in Latham, yet there would be nothing in this to prevent Garrison and Latham entering into another contract changing their status in any manner not infringing upon the rights of intervening innocent purchasers or creditors. This last contract was entered into 10 days after the execution of the first instrument, and it recited on its face that G. W. Garrison at that time was the owner of all the personal property situated in the Hales building, as described in the bill of sale thereto attached. Admitting that the first instrument did convey absolute title to Latham, it is obvious that this later contract, signed by both Garrison and Latham, was intended by them to have the effect of reconveying title to Garrison. The instrument was drawn in a form entitling it to recordation under section 4179, Wilson's Rev. & Ann. St. 1903. It was signed by the parties and two witnesses, as chattel mortgages are required to be signed and witnessed, and deposited in the office of the register of deeds in and for the county wherein the property was kept. To our mind there is no ambiguity about this instrument. By its terms it distinctly stated: That Garrison was the owner of the property described in the bill of sale attached thereto; that he was desirous of selling the same for the sum of $4,500, payable one-fourth cash, one-fourth in three months, one-fourth in six months, and one-fourth in nine months, deferred payments to bear interest at the rate of 8 per cent. per annum; and that he would retain title to said property until these payments were made in full. No layman seeing this instrument would be mistaken in its import. Most laymen and a good many lawyers ascribe to bills of sale of personal property a potency in transferring title thereto that they do not deserve; but that it was the intention of the parties to this trans-

action to make the bill of sale the symbol of title which was to pass to Latham upon its delivery to him there can be no doubt. As all of this is plainly discernible from the instruments placed of record, by Garrison, on the 13th day of May, it follows that any person thereafter dealing with Latham or his vendees in relation to this property must be deemed to have notice of the import of same. It is quite probable—indeed, it is very probable—that Thede and Zindel had no actual notice of these instruments; but if they had examined the records in the register of deeds' office, as it was their duty to do, they would have found the instruments deposited as required by law, and would have known that the title to the property was in Garrison.

It follows that the judgment of the court below must be modified to conform to this opinion.

Let a judgment be entered adjudging the title to said personal property to be in the plaintiff in error, G. W. Garrison, subject to the lien of the intervener, W. T. Hales, to secure the payment of any rent that may be due him by the terms of his lease-mortgage; the costs of the case to be taxed equally against the plaintiff in error and the defendants in error Thede and Zindel.

All the Justices concur.