## YONKMAN et al. v. HARVEY.

No. 18244. Opinion Filed Sept. 18, 1928.

Rehearing Withdrawn Dec. 4, 1928.

J. P. Evers and G. O. Grant, for plaintiffs in error.

Geo. B. Forrester and F. E. Riddle, for defendant in error.

REID, C. In this case the plaintiff, Lula M. Harvey, by her petition, alleged that she was the owner of an eight-apartment house located at 1440 South Quaker street, city of Tulsa, and certain furniture, fixtures, lighting fixtures, rugs and other furnishings therein situated and used by her tenants in the eight apartments in said house; that on the 23rd day of December, 1925, the defendants M. A. Yonkman, W. E. Brown, and C. W. Terry, who were doing business under the firm name of Brownies Auction & Brokerage Company, entered said apartment house of plaintiff, and, by force and threats, caused the tenants to remove from four of the apartments and removed the goods and all furniture and fixtures therefrom, and appropriated the same to their own use; and the plaintiff prayed judgment against the defendants for the value of the property so converted, and for the return of the goods, and damages for the wrongful and unlawful taking.

The defendants answered by general de-

nial, and, further that they purchased the property from J. P. Willis and Frank M. Willis, who were the owners of the same, and who delivered to them said property and executed to them bills of sales for the respective items of the property sold by them. And they further pleaded that the plaintiff was estopped to claim any interest in the property for the reason that she had stood by and permitted them to purchase same and pay said parties the consideration therefor, and gave the defendants no notice of any claim, if any she had in the property. They also answered, in substance, that the plaintiff placed J. P. Willis in possession and control of the property, whereby he could and did exercise apparent ownership of such property, and that she permitted him to have the possession and control thereof and hold himself out as the owner, and stood by and permitted him and Frank M. Willis, to whom he had conveyed part of the property, to sell the property to these defendants for a valuable consideration and gave no notice of her ownership, and she was now estopped to claim that said parties were not the owners of such property.

The plaintiff filed her reply in which she generally denied the allegations of defendants' answer adverse to her petition. She further replied that she had never sold such property to Willis, and he was not the owner of it, but that he attempted to obtain possession of said furniture by fraudulently pretending to buy the same from her, but that he never had possession of the furniture and she did not know of any claim made by him that he was the owner thereof, until after the removal of the furniture from said house by the defendants, and had no knowledge that the defendants were purchasing the same or claiming to do so until after they had removed said property from the building. She stated that the facts in possession of the defendants at the time of said pretended purchase of furniture and fixtures were sufficient, if they were acting in good faith, for them to have secured full information which would have disclosed that she was the owner of the property.

The case proceeded to trial before a jury, and after the evidence was completed, the plaintiff moved the court to instruct the jury to find that the plaintiff was the owner of the property in controversy, and this instruction was given and the jury so found; to all of which the defendant excepted. The remaining questions, which were the value of the property and the rental therefor, were submitted to the jury, which returned a verdict for $1,200 damages for conversion of the property and $300 for rental or usable value thereof after the taking. After unsuccessful motion for a new trial, the defendants appeal, and present as their propositions for reversal of this case ten assignments of error, but in their brief they state the questions as follows:

"(1) Did the plaintiff, Lula Harvey, on or about the 16th day of October, 1925, sell and deliver the goods and furniture in question to said J. P. Willis?

"(2) Did the said plaintiff, by conditional contract, sell to J. P. Willis the property in question?

"(3) Did the plaintiff place the said J. P. Willis in possession and control of said property, whereby he could and did exercise apparent ownership, or indicia of ownership, over said property?

"(4) Did the defendants purchase the said property in good faith, without notice, for value, and for a valuable consideration in any of the above conditions."

After the statement of the issues involved, defendants, in their brief, then say that they are satisfied from the evidence that there was no out and out sale of the property. Therefore, the first proposition is eliminated.

As we view the record in this case, from examination of the entire testimony, it is only necessary to examine the questions presented by the second and third foregoing assignments, and determine whether there is sufficient evidence to have required the court to submit the case to the jury under either of the propositions.

The testimony discloses, without contradiction, that the plaintiff was the owner of an eight-apartment house in the city of Tulsa, which was incumbered by a $20,000 mortgage made to the Southwestern Investment Company, of which a Mr. Hughes was the local agent and acting for the company, and that payments of $370 per month were burdensome to the plaintiff. Prior to the 16th of October, 1925, plaintiff had, in effect, listed this property for sale with a firm of real estate brokers, of which C. D. Wiley, a witness in this case, was one of the members. Just prior to the date mentioned one J. P. Willis appeared in Tulsa, and consulted with Wiley in regard to purchasing this apartment. He was taken to the apartment house where Mrs. Harvey, the plaintiff, first saw him. Thereafter, at the office of Wiley, a trade was agreed upon, by which Willis was conveying to the plaintiff certain lands in the state of Colorado, and she to him the apartment with its furnishings. Deeds were drawn conveying the realty, and left in the possession of Wiley, together with a contract as to how the details of the trade

were to be closed. As to whether this written contract mentioned the furniture in the apartment, the evidence is not clear. The plaintiff said it did not, and one of her attorneys testified that he had examined it several times, and it did not, but the agent, Wiley, appears to have been under the impression, as we gather from his testimony, that the furniture was included. The plaintiff had formerly lived in one of the apartments, but prior to this time had moved just across the street to a room in a private residence, and her apartment was vacant. Willis requested her on the 16th day of October, at the time the trade was made, to permit him to move with his family into this apartment, and upon advice of her counsel, who examined the contract, she agreed to this, and he moved in. After he got into the apartment, it was agreed between him and the plaintiff that he would do the janitor's work there, and one month's rent being due from some of the tenants, it was agreed that he might collect the rent and apply it on the mortgage indebtedness then pressing, which collection he made, but, of course, failed to pay on the mortgage. It gradually developed that Willis had no title to the Colorado property, and was in no way able to comply with his contract.

During the time Willis was attempting to comply with his contract, or pretending to do so, he began negotiations with the defendants to sell them the furniture in these apartments, and, in the meantime, he seems to have executed a bill of sale to part of the furniture to his father, Frank M. Willis. J. P. Willis represented to them, as shown by their testimony, that he was the owner of the furniture, and they examined the mortgage records to see whether this was true, and found no mortgage on the property, and proceeded to buy the furniture without further investigation.

Going to the first proposition, let us see whether there is any evidence that a conditional sales contract for the furniture was made, which required its recordation as to innocent purchasers under section 8551, C. O. S. 1921, which is as follows:

"Any instrument in writing, or promissory note, evidencing the conditional sale of personal property, which retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds in and for the county wherein the property shall be kept."

In the case of Tague v. Guaranty State Bank of Drumright, 82 Okla. 197, 202 Pac. 510, this court, while holding in that case the instrument to be a conditional sale, and that it should have been recorded in order to impart notice to innocent purchasers, most fully states the rule, sustained by abundant authorities, which distinguishes a conditional sale from a sale on condition, or executory contract of sale.

The agent, Wiley, is the only witness who remembers that the contract between these parties made any reference to the furniture, and the substance of his evidence is to the effect that it was only a contract for a sale, and he expressly states that it was agreed and understood between the parties that no bill of sale would be made for the furniture until Willis had cleared up the property he was conveying and made complete title to it. There is no evidence in this case showing there ever existed an instrument in writing, evidencing the sale of this furniture, which retained the title thereto in the plaintiff until the purchase price was paid. Therefore, the court did not err in refusing to submit the defendants' ownership of the property on the theory that they became innocent purchasers thereof by reason of the failure of plaintiff to have recorded a conditional sales contract.

Going to the other question necessary to a decision of this case, let us see whether the plaintiff delivered to Willis the property in question, clothed him with the indicia of ownership, or did any other acts by which she was estopped to claim, as against these defendants, that she was the true owner.

No claim of ownership of the property made by either of the Willises to the defendants, nor any act done by them showing such claim of ownership, was admissible on the question of estoppel, because these facts were never brought to the knowledge of the plaintiff. And the court, in passing upon the sufficiency of the evidence of estoppel to go to the jury, had the right to eliminate this testimony. The case of Ragan v. Citizens State Bank of Foraker, 38 Okla. 65, 131 Pac. 1093, holds that the declarations of a party in possession of property, to the effect that he is the owner, are admissible to show ownership, but are inadmissible on the issue of estoppel of the real owner, and this doctrine is affirmed in the case of Trimble v. Smith, 98 Okla. 250, 225 Pac. 364.

Eliminating the evidence which we have indicated as having no probative force on the question of estoppel, we simply find Willis and his family, and his father and family, occupying one of the apartments in the house, with the apparent possession of all of it,

and claiming to own the furniture in each of the apartments. It is admitted, and the evidence conclusively shows, that Willis was not, in fact, the owner. The furniture was moved from the house on December 21, and 22, 1925, while the plaintiff was at her farm near Nowata.

In determining whether these defendants could obtain title to this property by buying from one whom we will assume has been vested with possession alone of the property; we find the applicable rule stated in 10 R. C. L. 777, in the following language:

"Mere possession and control of personal property is not sufficient to estop the real owner from asserting his title against a person who has dealt with the one in possession on the faith of his apparent ownership."

The fact that plaintiff gave J. P. Willis the right to collect a month's rents, and to also act as janitor of the house and occupy a part of it, or if she had for these purposes delivered to him the entire possession of the house and furniture, would not have vested him with such indicia of title as would estop her to claim ownership of the furniture as against these defendants.

In the case of Young v. Cole, 91 Okla. 113, 216 Pac. 429, we find the law of this question sustained by many authorities stated as follows:

"It is a well-settled rule of law that the bailee receiving the custody and possession of personal property for a particular purpose, cannot, through the sale and delivery, pass the title of the bailor or owner of the property. Dows v. Milwaukee Nat. Exchange Bank (U. S.) 23 L. Ed. 214; Commercial Bank of Selma v. Hurt (Ala.) 19 L. R. A. 701; Burton v. Curyea (Ill.) 89 Am. Dec. 350; Chism v. Woods (Ky.) 3 Am. Dec. 740; Spooner v. Holmes (Mass.) 3 Am. Rep. 491; Commerce Nat. Bank v. Wisconsin Cent. Co. (Minn.) 46 N. W. 342, 9 L. R. A. 263; Smith v. Clews (N. Y.) 4 L. R. A. 392; Hamet v. Letcher (Ohio) 41 Am. Rep. 519.

The court did not err in refusing to submit the issue of estoppel to the jury.

The judgment of the trial court is affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.