No. 30,104.

HOMER HARBERT and J. L. WALKER, Partners, doing business as HARBERT & WALKER, *Appellants*, v. THE FORT SMITH CANNING COMPANY, THE MISSOURI PACIFIC RAILROAD COMPANY, and THE S. E. LUX, JR., MERCANTILE COMPANY, *Appellees*.

(5 P. 2d 849.)

Opinion filed December 12, 1931.

*T. M. Lillard, Bruce Hurd, O. B. Eidson,* all of Topeka, and *John K. Butt,* of Eureka Springs, for the appellants.

*Keene Saxon,* of Topeka, for appellee The S. E. Lux, Jr., Mercantile Company; *W. P. Waggener, J. M. Challiss, O. P. May* and *B. P. Waggener,* all of Atchison, for appellee The Missouri Pacific Railroad Company.

The opinion of the court was delivered by

SMITH, J.: This was an action in replevin. Judgment was for defendant. Plaintiffs appeal.

Appellants were partners in the business of canning tomatoes at Green Forest, Ark. Fort Smith Canning Company, one of the appellees, is not a company, but a trade name for one Wampler. His business was that of selling tomatoes to jobbers and then buying them from canners in the Ozarks for delivery. Appellee, S. E. Lux, Jr., Mercantile Company, is a corporation engaged in the business of wholesale buying and selling of groceries and produce at different points in Kansas. Appellee, the Missouri Pacific Railway Company, is a common carrier operating in Kansas and Arkansas and other states.

On March 30, 1927, Lux contracted with Wampler for five thousand cases of tomatoes. Pursuant to this agreement, on April 9, Wampler drew his two trade acceptances on Lux for certain amounts, due June 9 and July 9. The record is silent as to when these acceptances were accepted for payment by Lux, but it is presumed in the agreed statement of facts that Wampler received the proceeds in cash.

On May 14 Wampler contracted with Harbert & Walker for the purchase of a carload of tomatoes. On May 16 he gave Harbert & Walker the check of the Fort Smith Canning Company for $1,653.80 in payment for these tomatoes. The tomatoes were loaded on a car and at the request of Wampler, Homer Harbert consigned the car to Lux at Salina, Kan., f. o. b. Green Forest, Ark., in the name of Fort Smith Canning Company. Appellants kept possession of the bill of lading. On the same day car was attached to a freight train and pulled away from Green Forest. The transactions here detailed all occurred after banking hours on the 16th. On May 17 appellants wired the bank upon which the check was drawn, which had been given by Wampler in payment for the tomatoes, and received a reply that the check was not good on account of lack of funds. Later the check was presented at that bank and payment refused. On May 18 appellants requested the defendant railroad company, to which the carload of tomatoes had been delivered, to stop and hold this car. Acting on this request, the car was stopped and held at Blue Mound, Kan. On May 24 appellants requested the railroad company to rebill the car to them at Joplin, Mo. This request was

refused, whereupon this suit was filed. Trial was to the court. The evidence was an agreed statement of facts and the deposition of an officer of the railroad company. This court will examine the entire transaction in the same manner as though it were a trial court. Some questions were raised by Lux touching the jurisdiction of the district court of Linn county to try this case. They are not pressed, however, in the brief of appellee, filed here, and since no cross appeal was taken by appellee from the ruling of the trial court adverse to this position, they will not be discussed here. The trial court held that the plaintiffs were not entitled to the possession of the carload of tomatoes and that the Lux Company was entitled to the possession of it. Judgment was entered accordingly.

The questions pressed here by appellants are as follows:

First: Was the transaction between the plaintiffs and the defendant, Wampler, one for cash on delivery of the goods, and upon failure of the buyer to pay were the plaintiffs entitled to the immediate possession of the goods from him?

Second: Does the Lux company stand in the position of an innocent purchaser for value without notice?

There are some other questions dealt with in the briefs, but when the above questions are answered it is believed the entire transaction will be plain.

As to the question whether the transaction is one for cash, this must be answered in the affirmative. The agreed statement of facts so provides, and the trial court so treated it in the memorandum of opinion. Also, this court has held that where goods are sold under a bargain that payment is to be cash and payment is made by check at the time the goods are delivered, which check turns out to be bad for want of funds in the bank on which it is drawn, then the parties are in the same position as though no check had been given. (*Bank v. Brown,* 80 Kan. 520, 103 Pac. 102.)

We will discuss this case with that point settled. The case of *Bank v. Brown* was one where a farmer had sold wheat to an elevator company for cash and had taken its check in payment therefor. Before the check was cashed the company failed and the check was not paid. This court held that the farmer still owned the wheat. The court quoted from Williston on Sales, 346, as follows:

" 'If after bargaining for a cash sale the seller subsequently, voluntarily, delivers to the buyer the goods with the intent that the buyer may immediately use them as his own (*i. e.,* not for inspection or a similar purpose), and with-

out insisting upon contemporaneous payment, this action is absolutely inconsistent with the original bargain. Such a delivery is not only evidence of the waiver of the condition of cash payment, it should be conclusive evidence.'" (p. 522.)

This court then said:

"But as a practical necessity, to avoid the inconvenience of requiring the seller of an article to keep one hand upon it until with the other he grasps the currency tendered in payment, there must be some relaxation of this rule. Delivery and payment as a practical matter cannot be absolutely simultaneous. Some slight interval between the two acts is inevitable, and the criterion upon which the courts have agreed with substantial unanimity is that such interval does not conclusively prove a total abandonment of title and the right of possession by the seller unless under all the circumstances of the case it in fact shows that result to have been intended." (p. 522.)

The question of the respective rights of buyer and seller where the bargain was for a cash sale and a bad check is given in payment therefor is well settled by the above case.

In *Grain Co. v. Harbour,* 89 Kan. 824, 133 Pac. 565, this court spoke with approval of the decisions in *Bank v. Brown,* supra, but said, "If the property had reached an innocent purchaser a very different question would have been presented."

In the case at bar the Lux company argues that it is an innocent purchaser, that the tomatoes had been turned over to it by appellees and that all right of appellees to possession of them was gone. The case of *Grain Co. v. Harbour,* supra, is relied on to sustain this position. In that case a grain company had sold grain to Harbour. It had possession of the bills of lading. Those were delivered to the railroad company. The grain company and Harbour were both in the same town, but notwithstanding this a draft was drawn by it upon Harbour for the amount of the purchase price and sent to Kansas City for collection. During the time that the draft was making the trip to Kansas City and back Harbour obtained possession of the cars and the bill of lading for them. He sold them to Christopher & Co. and drew a draft upon that company for the price, attaching the bill of lading. In the meantime the draft drawn by Harbour to the Kemper company had been presented to the bank upon which it was drawn and payment refused. The Kemper company brought an action for possession of the wheat. The court held that title to grain had passed to Christopher & Co.

In the memoranda of decision the trial court in the case at bar stated that the case of *Grain Co. v. Harbour* was controlling. There

is a distinction between the two cases. In the Harbour case the trial court held, and this court approved, that the sale by Kemper Grain Company to Harbour was on credit. In the case at bar we conclude that the sale was for cash.

In the Harbour case the Christopher Grain Company, which stood in the same position that the Lux company stands in, had paid out money on the particular transaction, relying on bills of lading which Harbour had in his possession. It satisfied all the requirements of an innocent purchaser for value. In the case at bar the Lux company parted with nothing as a result of the transaction at Green Forest on May 16. As far as the record shows, the trade acceptances had been drawn by Wampler in April. The record is silent as to when they were paid by the Lux company. They were not due till June and July. The agreed statement of facts says that it is presumed that they were paid. It is a fair inference that they had reached the hands of an innocent purchaser.

There is no evidence, however, that the Lux company parted with anything as a result of the transaction between Wampler and Harbert & Walker. The Lux company paid appellants nothing for the tomatoes, but received whatever title to them it had in consideration of advances previously made Wampler. It was not an innocent purchaser of the tomatoes. (*S. E. Lux, Jr., Mercantile Co. v. Jones,* 6 S. W. 2d, 302; *Hamilton v. Rankin,* 108 Ark. 552, 158 S. W. 496.) In *Henderson v. Gibbs,* 39 Kan. 679, 18 Pac. 926, this court said:

"But even with these views, which are liberal as toward the second purchaser, it must be held that where the second purchaser has taken the property only in payment or part payment of a preëxisting debt, and has not paid or parted with or surrendered anything of value in consideration therefor, he takes nothing but the fraudulent vendee's title, and the original owner may rescind his contract with his fraudulent vendee and retake the property." (p. 687.)

This rule has been followed in *Schulein v. Hainer,* 48 Kan. 249, 29 Pac. 171, and *Bank v. Clark,* 99 Kan. 18, 160 Pac. 1149.

Since the Lux company was not an innocent purchaser and since the sale was for cash, we conclude that this case should follow the rule laid down in *Bank v. Brown,* supra. There is an argument made in the briefs concerning the Pomerene bill-of-lading act, and the right of stoppage *in transitu* thereunder. Since this car of tomatoes was stopped and the rights of the respective parties tried out it will not be necessary to discuss that here.

As to the freight bill, the carrier had a lien on the goods for this bill. It surrendered possession of the goods in obedience to the writ of replevin. Since appellants took the goods from the possession of the carrier, judgment should be against them for the amount of the freight.

The judgment of the trial court, giving Samuel E. Lux, Jr., Mercantile Company the value of the carload of tomatoes, is reversed, with instructions to enter judgment for appellants. That part of the judgment ordering appellants to pay the freight bill is affirmed.