## SHANNON v. NICOMA PARK DEVELOPMENT CO.

No. 24360. Jan. 21, 1936.

Rehearing Denied February 11, 1936.

· Brown Moore and John F. Butler, for plaintiff in error.

Shirk, Danner & Phelps, Samuel O. Neff, and Charles E. Earnheart, for defendant in error.

BAYLESS, J. L. D. Shannon, plaintiff in error and defendant below, appeals from a judgment of the district court of Oklahoma county, Okla., in favor of Nicoma Park Development Company, a corporation, defendant in error and plaintiff below. The parties will be referred to as they appeared in the trial court.

The plaintiff replevined 1,136 chickens from the defendant. The plaintiff claimed to own the chickens. The defendant claimed the right to the possession thereof by reason of a chattel mortgage given to him by one Nields. At the trial the plaintiff admitted that 500 of the chickens replevined were rightfully in the possession of defendant, but asserted that when these 500 chickens were by mistake taken in replevin, 500 chickens which it owned were left with the defendant.

A jury was impaneled to try the case, but at the conclusion of the introduction of testimony, upon motion of plaintiff, the trial court instructed the jury that plaintiff had established its title to 1,136 chickens, and took the issue of title from the jury, but instructed the jury that plaintiff was entitled to judgment against defendant for the 500 chickens which were left with him and defendant was entitled to judgment against plaintiff for the 500 chickens taken wrongfully in conversion. These values were submitted to the jury for determination and it rendered its verdicts; for the plaintiff $200, for the defendant $275.

Several contentions are made by defendant, but nearly all revolve around the question of whether plaintiff owned and had in its possession the 1,136 (or more) chickens claimed, or, stated another way, whether the mortgage Nields gave defendant was good as to the chickens claimed by plaintiff.

The evidence disclosed that plaintiff owned the hatchery property; that is, the real estate and all equipment. It entered into a lease contract with Nields by which he was to operate this business. At that time, October, 1930, plaintiff had 1,275 old hens, brooding stock, which it kept in a separate pen at the hatchery, but no sign or other writing was there to give notice thereof to anyone. It agreed with Nields that he might sell these hens for the plaintiff and it later gave him instructions so to do, but that he should replace these hens with younger hens. The manager for plaintiff testified that Nields sold these hens at his directions, and that prior to April 6, 1931,

Nields had replaced these 1,275 hens with 1,500 younger ones (the excess to allow for mortality), and that these hens were kept in a pen separate from the other chickens and were fed food furnished by plaintiff. Nields and his employees fed these chickens. Shannon was engaged in the sale of poultry feeds and visited Nields in December of 1930, at which time he saw the hatchery, but was uncertain as to its arrangements. At that time he had sold Nields no feed, and had no claim on any of Nields' property. He visited Nields one month later (about January, 1931) and saw Nields' chickens, and says all "he saw" were in one lot or enclosure. He does not say he saw all the chickens on the place. Nields gave him a note and chattel mortgage on April 6, 1931, and at that time he saw about 15,000 or 20,000 chickens "scattered over the poultry farm in various pens, and houses and in the brooder lot, hatchery." He denied seeing 1,136 in any particular pen. This does not prove plaintiff did not have about 1,500 in some pen there. The plaintiff's proof was clear and uncontradicted that 1,500 young hens had been delivered to it by Nields before defendant received his chattel mortgage, so that the only theory upon which defendant can rely is one in the nature of estoppel on the part of plaintiff to deny Nields' right to possession of these 1,500, or to own them, or to mortgage them.

It is clear to us that plaintiff had come into possession of these chickens before April 6, 1931; that plaintiff made no representation to defendant which would lead him to believe Nields could mortgage these chickens; that defendant relied upon Nields' apparent possession or ownership of all chickens on the premises; and that these chickens were not kept commingled in one big enclosure, but that they were kept in groups or flocks in various "pens," "houses," and "brooder lots."

Does the fact that Nields had possession and control of these hens, at least to defendant's belief, prevent plaintiff from asserting his title thereto? No.

In 10 R. C. L. 777, it is said:

"Mere possession and control of personal property is not sufficient to estop the real owner from asserting his title against a person who has dealt with the one in possession on the faith of his apparent ownership" and cases cited thereunder.

Defendant only said Nields claimed these chickens. He did not say Nields owned

them, for he had no independent knowledge on this point. We said in Yonkman v. Harvey, 133 Okla. 252, 271 P. 839:

"In an action by a plaintiff to charge defendants with conversion of certain personal property, where defendants answer that they were innocent purchasers from one in possession of such property under a conditional sale contract, and there is no evidence showing that a conditional sale contract, as described in section 8551, C. O. S. 1921, was ever executed by the plaintiff, the court did not err in refusing to submit this question to the jury.

"Under the issue of estoppel, the declarations of a person in the possession of personal property, to the effect that he is the owner thereof, made out of the presence of the real owner, and not shown to have been thereafter brought to the knowledge of such owner, have no probative force on the issue of estoppel. And a court trying the case had the right to eliminate such testimony in determining whether the evidence on the issue of estoppel was sufficient to go to the jury."

The trial court committed no error in withdrawing the issue on this point from the jury.

Defendant's fourth assignment of error concerning the statements made by Nields to defendant at the time Nields executed the mortgage to him is not good, for it was held in Yonkman v. Harvey, supra, that statements made by the person in possession regarding his title were inadmissible against the owner, when not made in the owner's presence. The defendant complains also of the ruling of the trial court when an objection was made to a certain question. The question was asked for the purpose of impeaching the testimony of another witness who had testified that he did not say that certain persons moved certain of the chickens after the mortgage was made, but before the replevin action. This question was objectionable as to form, because it was asked as a general proposition and did not identify the person charged with moving the chickens. The court properly sustained the objection to it.

The seventh assignment of error complains of the court's refusal to give a requested instruction to the effect that Nields transferred the chickens to plaintiff to defraud defendant. There is no evidence in the record to this effect. The requested instruction was properly refused.

The court left to the jury the question of the value of the two separate lots of 500 hens. The jury returned into court on more than one occasion and, through its foreman, professed to be unable to agree as to values. However, on each of these occasions the trial judge sent them to deliberate again, and eventually verdicts were returned. This was entirely within the discretion of the trial court.

Judgment affirmed.

McNEILL, C. J., and WELCH, CORN, and GIBSON, JJ., concur.